ALSTON & BIRD LLP
Derin B. Dickerson, GA Bar #220620 (*admitted pro hac vice*)
Caroline R. Strumph, GA Bar #250168 *(admitted pro hac vice*)
Shanique C. Campbell, GA Bar #346659 (*admitted pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
derin.dickerson@alston.com
caroline.strumph@alston.com
shanique.campbell@alston.com

Kathleen Benway, DC Bar #474356 (*admitted pro hac vice*)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3034
kathleen.benway@alston.com

Lisa L. Garcia, CA Bar #301362 (*admitted pro hac vice*)
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1147
lisa.garcia@alston.com

***Attorneys for Defendant Grand Canyon Education, Inc.***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Federal Trade Commission,
Plaintiff,

vs.
Grand Canyon Education, Inc.;
Grand Canyon University, Inc.; and
Brian E. Mueller,

Defendants.

No. 2:23-cv-02711-DWL

**GRAND CANYON EDUCATION, INC.'S PARTIAL MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. STANDARD OF REVIEW ..... 3

IV. ARGUMENT ..... 4

A. The FTC Has Failed to Allege a Violation of Section 5(a) of the FTC Act or the TSR Regarding Representations About GCU's Nonprofit Status (Counts I and III). ..... 4

B. Counts I and III Fail as a Matter of Law Because the FTC Has Not Alleged an Actionable Representation by GCE Regarding GCU's Nonprofit Status. ..... 5

C. Counts I and III Also Fail as a Matter of Law Because the FTC Has Not Alleged That Any Representation by GCE Regarding GCU's Nonprofit Status Was Material to Consumers. ..... 7

D. Counts II and III Fail as a Matter of Law Because the FTC Has Not Alleged an Actionable Representation or Omission Regarding GCU's Doctoral Program. ..... 8

1. GCE Did Not Misrepresent the Time It Takes To Complete A GCU Doctoral Program. ..... 8

2. GCE Did Not Misrepresent the Tuition and Cost For A GCU Doctoral Program. ..... 11

E. The FTC Has Failed to Plead Counts I, II, and III with Particularity. ..... 11

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....... 3, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....... 3, 8

*Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC*, No. CV 16-07111-BRO, 2016 U.S. Dist. LEXIS 194873 (C.D. Cal. Nov. 15, 2016) ....... 4, 7, 12

*FTC v. D-Link Sys.*, No. 3:17-cv-00039-JD, 2017 U.S. Dist. LEXIS 152319 (N.D. Cal. Sept. 19, 2017) ....... 12

*FTC. V. Direct TV, Inc.*, No. 15-cv-01129-HSG, 2018 U.S. Dist. LEXIS 139192 (N.D. Cal. Aug. 16, 2018) ....... 4

*FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 U.S. Dist. LEXIS 126110 (D. Ariz. 2013) ....... 12

*FTC v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 U.S. Dist. LEXIS 80341 (D. Nev. 2013) ....... 13

*FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010) ....... 4, 11, 12, 14

*FTC v. NCH, Inc.*, No. 95-16893, 1997 U.S. App. LEXIS 760 (9th Cir. Jan. 15, 1997) ....... 5

*FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184 (D. Nev. 2017) ....... 5, 6, 7

*FTC v. QYK Brands LLC*, No. SACV 20-1431, 2021 U.S. Dist. LEXIS 229942 (C.D. Cal. Nov. 30, 2021) ....... 13

*FTC v. Real Wealth, Inc.*, No. 10-0060-CV-W-FJG, 2011 U.S. Dist. LEXIS 52566 (W.D. Mo. May 17, 2011) ....... 7

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ....... 4, 7

*Grand Canyon University v. Cardona, et al*, No. 2:21-cv-00177 (D. Ariz.) .......... 6

*Jones v. Bock*, 549 U.S. 199 (2007) .......... 3

*Robinson v. JP Morgan Chase Bank, NA*, No. CV-22-00687-PHX-SMB, 2023 U.S. Dist. LEXIS 122595 (D. Ariz. July 14, 2023) .......... 8

*Vess v. Ciba—Geigy Corp. USA*, 317 F.3d 1097 (9th Cir.2003) .......... 4, 12

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861 (11th Cir. 2023) .......... 10

**FEDERAL STATUTES**

Federal Trade Commission Act .......... 1, 5, 8, 11, 12, 13

Federal Trade Commission Act, §5 .......... 1, 3, 4, 5, 7, 11, 12, 14

Higher Education Act .......... 6, 7

Title IV of the Higher Education Act, 20 U.S.C. § 1070 .......... 6, 7, 8

Internal Revenue Code, § 501(c)(3) .......... 6

Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105 .......... 13

**RULES**

Rule 8 .......... 5

Rule 9(b) .......... 2, 3, 4, 5, 12, 13, 14

Rule 12(b)(6) .......... 3

**REGULATIONS**

16 C.F.R. § 310.3(a)(2)(i), (iii) .......... 7

34 C.F.R. § 75.51 .......... 6

## I. INTRODUCTION

After a nearly two-year long investigation, the Federal Trade Commission ("FTC") filed the instant Complaint filled with dubious allegations of misrepresentations. The Complaint does not identify any actual misrepresentations that harm or mislead students. Instead, the FTC attempts to impose significant civil penalties on Defendants based on true statements that accurately reflect Grand Canyon University's ("GCU") tax-exempt status and the minimum length of some of its doctoral degree programs. Specifically, the Complaint alleges that Grand Canyon Education ("GCE"), along with GCU, and GCE CEO and GCU President Brian E. Mueller: (1) falsely represented that GCU is a non-profit institution, and (2) falsely represented that GCU doctoral degrees are typically completed in 20 courses or 60 credits. (Counts I, II, and III).[1] Based on these allegations, the FTC asserts claims under the Federal Trade Commission Act ("FTC Act") and the FTC's Telemarketing Sales Rule ("TSR"). Each of the FTC's claims fail as a matter of law for at least four reasons:

***First,*** the allegation that Defendants falsely represented that GCU is a nonprofit cannot form the basis of a claim for deceptive acts because GCU ***is*** a nonprofit, tax-exempt organization. The Internal Revenue Service ("IRS"), the State of Arizona, and the Higher Learning Commission ("HLC") all recognize GCU as a nonprofit. Accordingly, it is not false or misleading for GCE to market GCU as a nonprofit institution, and any such representation is not actionable under the FTC Act.

***Second***, the FTC has not plead that any misrepresentations regarding GCU's nonprofit status were "material" to consumers. Because the FTC has not even attempted to satisfy this element of a Section 5(a) claim under the FTC Act, the claim necessarily fails.

***Third,*** the allegation that Defendants falsely represented that GCU doctoral degrees are "typically" completed in 20 courses or 60 credits cannot form the basis of a claim for deceptive acts because the FTC has failed to allege a single instance of GCE—or any Defendant—

[1] Plaintiff also alleges that Defendants contacted individuals on the do-not-call registry and individuals who asked not to be contacted (Counts IV and V). GCE does not move to dismiss Counts IV and V in this Motion. GCE does not admit the truth of the allegations supporting Counts IV and V or concede the merits of the FTC's claims.

making such a representation. *See* Compl. ¶ 71(a). To the extent the FTC attempts to rely on a representation that students can earn a degree in 60 credits, the claim fails because such a representation is not deceptive. Doctoral students ***can*** in fact earn a degree in 60 credits. The enrollment agreement excerpted in the Complaint (a GCU document, which does not reflect any statement by GCE) shows only the ***minimum*** courses and credit hours necessary to earn a doctoral degree. As with any doctoral program that requires a dissertation, the time it takes a student to complete a doctoral degree program varies for reasons unique to each student, including the student's dissertation strategy, the student's approach to her chosen topic, the student's aptitude and academic background, and the student's life circumstances that permit her to devote time toward the degree. GCU, like any institution of higher education, does not guarantee that students will complete their required coursework in a certain period of time.

***Fourth***, the FTC's fraud-based claims fail to satisfy Rule 9(b)'s heightened pleading standard because the Complaint does not identify the who, what, why, where, and when of the alleged fraud. Instead, the Complaint impermissibly lumps all Defendants together without indicating which Defendants were responsible for what alleged conduct.

For these and other reasons outlined below, GCE requests that the Court grant its partial motion to dismiss Counts I, II, and III.

## II. BACKGROUND

GCU is a comprehensive, regionally accredited Christian university that has for decades provided an affordable education to hundreds of thousands of students on its 260-acre campus in Phoenix, Arizona. GCU offers more than 200 graduate and undergraduate degree programs both online and in person. GCE is a services provider that serves colleges and universities around the country, including GCU. GCE provides a suite of support services, including marketing, advertising, technology, and student counseling. GCE's partnership with GCU has worked extraordinarily well, helping GCU to focus on providing a top-rate education to often underprivileged students at an affordable cost. Notably, GCE has more than twenty university partners in addition to GCU.

GCU has served undergraduate and graduate students since at least 1951[2] when it first operated as a nonprofit, Baptist college in Phoenix, Arizona. (Compl. ¶ 10). In the early 2000s, GCU was purchased by a group of investors who installed new leadership, shifted GCU's focus from an exclusively in-person institution to a dual in-person and online university, and began operating the school as a proprietary education institution. *Id.* Through June 30, 2018, Grand Canyon Education, Inc. d/b/a Grand Canyon University was the legal entity that operated the school and provided educational services to students. (Compl. ¶ 5). On July 1, 2018, GCE sold the educational assets of Grand Canyon University, along with its name, to a standalone, nonprofit organization that simultaneously changed its name to Grand Canyon University. The conversion back to nonprofit, tax exempt status enabled GCU to more fully engage in its academic mission. GCU has been recognized by the IRS as a 501(c)(3) tax-exempt organization since July 1, 2018 to the present. (Request for Judicial Notice at 2-3).

## III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), if a complaint fails to state a legally cognizable claim, it must be dismissed. *Jones v. Bock*, 549 U.S. 199, 215 (2007). While the law does not require "detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine the sufficiency of alleged claims, a court should first identify and reject any conclusory allegations which, "because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then determine if the complaint gives the defendant fair notice of a legally cognizable claim, *Twombly*, 550 U.S. at 555.

In addition, where, as here, a plaintiff alleges claims based on fraud, the complaint must also satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirements. Rule 9(b) applies to claims brought under Section 5 of the FTC Act because such claims "sound in fraud" and must allege a "unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of the claim." *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852-53

[2] GCU—originally Grand Canyon College—was chartered on Aug. 1, 1949, with approximately 100 students in Prescott, AZ. In 1951, the college relocated to Phoenix.

(C.D. Cal. 2010) (noting similarities between claims brought under Section 5 of the FTC Act and claims for negligent misrepresentation, which are subject to Rule 9(b)'s heightened pleading standard). Accordingly, claims for violation of Section 5(a) of the FTC Act must state with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba—Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (internal quotation marks omitted); *see also Lights of Am.*, 760 F. Supp. 2d at 854 (finding the FTC fails to allege the "who, what, when, where, and how" of the fraud because "the allegations do not differentiate between conduct committed by [the three defendants], nor do they explain when or where the alleged misrepresentations were made").

## IV. ARGUMENT

### A. The FTC Has Failed to Allege a Violation of Section 5(a) of the FTC Act or the TSR Regarding Representations About GCU's Nonprofit Status (Counts I and III).

To state a claim for deceptive acts or practices under Section 5 of the FTC Act, a plaintiff must allege (1) a "representation, omission, or practice that" (2) "is likely to mislead consumers acting reasonably under the circumstances," and is (3) "material." *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). While "[d]eception may be found based on the 'net impression' created by a representation," the net impression must be one that is "likely to mislead reasonable consumers." *FTC. V. Direct TV, Inc.*, No. 15-cv-01129-HSG, 2018 U.S. Dist. LEXIS 139192, *18 (N.D. Cal. Aug. 16, 2018). Similarly, to state a claim for deceptive telemarketing practices under the TSR, a plaintiff must allege that a telemarketer misrepresented "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." *Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC*, No. CV 16-07111-BRO (JEMx), 2016 U.S. Dist. LEXIS 194873, at *19 (C.D. Cal. Nov. 15, 2016).

The FTC has failed to meet its threshold pleading requirement because: (i) it has not alleged any false representation or omission by GCE regarding GCU's nonprofit status, and (ii) it has not demonstrated that any alleged representation or omission by GCE was material

to any consumer's decision to attend GCU.

### B. Counts I and III Fail as a Matter of Law Because the FTC Has Not Alleged an Actionable Representation by GCE Regarding GCU's Nonprofit Status.

In Counts I and III, the FTC alleges that "Defendants"[3] violated the FTC Act and TSR by falsely representing that GCU is a nonprofit institution and "transitioned back to its prior manner of operating as a nonprofit institution." (Compl. ¶ 68). This alleged representation is not actionable because it is true and unlikely to mislead prospective students.

"The test for a violation of Section 5 of the [FTC Act] is whether the representations are likely to deceive consumers." *FTC v. NCH, Inc.*, No. 95-16893, 1997 U.S. App. LEXIS 760, at *7 (9th Cir. Jan. 15, 1997). Accordingly, to state a claim, the FTC must allege the existence of deceptive representations. Courts have described representations as deceptive where "the maker of the representation lacks a reasonable basis for the claim." *FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184, 1190 (D. Nev. 2017) (citing *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010)). The FTC's Section 5 and TSR claims here fail because GCE did not make any false representations about GCU's nonprofit status.

It is undisputed that GCU is recognized as a nonprofit institution by the IRS, the State of Arizona, and the HLC. (Request for Judicial Notice at 2-3). During the time period in which GCE allegedly made representations that GCU was a nonprofit entity, every federal, state, and quasi-regulatory agency to opine on the issue recognized GCU as a nonprofit entity. Indeed, to this date, GCU's accrediting agency, the HLC, identifies GCU on its public-facing website as a private not-for-profit school. *Statement of Accreditation Status*, Higher Learning Comm'n, https://www.hlcommission.org/component/directory/?Action=ShowBasic&Itemid=&instid=1005 (last visited Feb. 9, 2024) ("Control: Private NFP"). Unlike the State of Arizona and the

---

[3] The FTC improperly groups all Defendants together in its allegations and fails to allege specifically which Defendant made which alleged misleading representation or omission. For this reason, the Complaint fails to state a claim under both Rule 9(b)'s heightened pleading standard for claims sounding in fraud and Rule 8. *See* Section III.

IRS, which are statutorily charged with determining non-profit and 501(c)(3) tax-exempt status, the Department of Education ("ED") has refused to recognize GCU as a nonprofit for purposes of its participation in programs under Title IV of the Higher Education Act ("HEA"), 20 U.S.C. § 1070 *et seq*. However, ED's determination for Title IV purposes does not alter the fact that GCU is a nonprofit, 501(c)(3) organization under the law. Accordingly, GCE had more than a reasonable basis for identifying GCU as a nonprofit.

Indeed, it was patently reasonable for Defendants to identify GCU as a nonprofit given ED's historical deference to the IRS in determining whether an institution is a nonprofit. The Department of Education regulations explicitly provide that an institution "may show that it is a nonprofit organization by . . . [p]roof that the Internal Revenue Service currently recognizes the [institution] as an organization to which contributions are tax deductible under Section 501(c)(3) of the Internal Revenue Code." 34 C.F.R. § 75.51; *see also OMICS Grp. Inc*., 302 F. Supp. 3d at 1190. According to the allegations in the Complaint, Defendants advertised GCU as a nonprofit from July 2018 to November 2019. (Compl. ¶¶ 21-24). During this entire time period, GCE did not know that ED would later make an incongruent departure from the prior decisions of the IRS, the State of Arizona, and HLC. GCE cannot be held liable for truthful statements that were not misleading to prospective students because GCU was (and is), in fact, a nonprofit, tax-exempt entity.

Moreover, the Complaint acknowledges that Defendants stopped referring to GCU as a nonprofit shortly after ED informed GCU of its decision not to recognize the school as a nonprofit for Title IV purposes.[4] (Compl. ¶ 24). Indeed, the FTC does not allege a single instance *after* November 2019 when GCE represented to prospective students that GCU was a nonprofit institution. *See generally* Compl. ¶¶ 21-26. Accordingly, the FTC has not alleged a material representation that is "likely to mislead consumers acting reasonably under the circumstances." *Stefanchik*, 559 F.3d at 928.

---

[4] The separate question of whether ED was permitted under the law to deny GCU of its nonprofit status for purposes of the HEA, after the IRS made a different determination, is the subject of an appeal currently pending before the Ninth Circuit Court of Appeals. *See Grand Canyon University v. Cardona, et al*, No. 2:21-cv-00177 (D. Ariz.).

Because any representations that GCU was (and is) a nonprofit entity were true, such alleged representations are not deceptive, *OMICS Grp. Inc.*, 302 F. Supp. 3d at 1190, and do not support a claim for violation of Section 5(a) of the FTC Act or the TSR. The Complaint does not allege an actionable false or misleading representation made by GCE about GCU's nonprofit status, and thus, Counts I and III fail and should be dismissed.

**C. Counts I and III Also Fail as a Matter of Law Because the FTC Has Not Alleged That Any Representation by GCE Regarding GCU's Nonprofit Status Was Material to Consumers.**

To state a claim under Section 5(a) of the FTC Act or deceptive telemarketing under the TSR, the FTC must also allege that a misleading representation or omission was *material* to the consumer. 16 C.F.R. § 310.3(a)(2)(i), (iii); *see also Prime Mktg. Holdings*, 2016 U.S. Dist. LEXIS 194873, at *19. "A representation is material if it involves information likely to affect a consumer's decision to purchase a particular product or service." *FTC v. Real Wealth, Inc.*, No. 10-0060-CV-W-FJG, 2011 U.S. Dist. LEXIS 52566, at *6-7 (W.D. Mo. May 17, 2011). The FTC has not even attempted to satisfy this pleading requirement.

The FTC alleges that it was misleading to call GCU a nonprofit because students would be confused and infer that GCU was a nonprofit for Title IV purposes. Even if prospective students were confused, the FTC would have to sufficiently allege that confusion over GCU's Title IV nonprofit status was material. The FTC has failed to make this showing.

The FTC has not sufficiently alleged that it was material to prospective students considering enrolling in GCU that although GCU was recognized as a nonprofit institution by the State of Arizona and the IRS, ED did not recognize GCU as a nonprofit exclusively for purposes of its participation in programs under Title IV of the Higher Education Act. It defies common sense to conclude that prospective students are even aware of the regulatory implications of a nonprofit designation under the HEA regulations, let alone that the designation would impact their decision to enroll. This is especially true given that there is no impact to a student's ability to access Title IV funds.

To be sure, the Complaint contains no allegations that support the materiality element

of Plaintiff's claims and instead alleges in conclusory fashion that "[t]he representations that GCU was a nonprofit and had 'transitioned back' to its non-profit roots were material to consumers" and that "Defendants" made these representations "to induce enrollment." (Compl. ¶¶ 22-23). The FTC does not provide factual allegations describing *why* consumers would allegedly find that information material to their enrollment decision or *how* it would influence their decision. This is the exactly the type of conclusory allegation that is insufficient under the law. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679; *see also Robinson v. JP Morgan Chase Bank, NA*, No. CV-22-00687-PHX-SMB, 2023 U.S. Dist. LEXIS 122595, at *8 (D. Ariz. July 14, 2023) (granting motion to dismiss where plaintiff provided no facts and only conclusory statements in the complaint).

Accordingly, Counts I and III also fail because the Complaint fails to allege that deceptive or false representations were material.

### D. Counts II and III Fail as a Matter of Law Because the FTC Has Not Alleged an Actionable Representation or Omission Regarding GCU's Doctoral Program.

#### 1. GCE Did Not Misrepresent the Time It Takes To Complete A GCU Doctoral Program.

In Counts II and III, the FTC alleges that "Defendants" violated the FTC Act and TSR by falsely representing that GCU doctoral degrees are "typically" completed in twenty courses or 60 credits. (Compl. ¶ 71). The FTC fails to state a claim for at least two reasons.

***First***, contrary to the allegation in Paragraph 71 of the Complaint, the FTC does not identify a single representation that GCU doctoral degrees that include a dissertation "*are typically* completed in twenty courses or 60 credits." Counts II and III are, thus, based on an alleged representation that is not reflected anywhere in the Complaint. *Robinson*, 2023 U.S. Dist. LEXIS 122595, at *8 (conclusory allegations are insufficient under the law).

***Second***, the FTC has not identified any misrepresentations regarding GCU's doctoral programs. The FTC appears to base its claims on documents describing GCU doctoral programs as "requir[ing] a total of 60 credits" and enrollment agreements listing twenty "Core

Courses." (Compl. ¶ 51). The FTC alleges that these representations are misleading because many students (though not all) must enroll in additional "continuation courses" to satisfy their dissertation requirements to earn their doctoral degree.[5] (Compl. ¶¶ 56-57). However, the documents relied upon reveal the deficiencies in the FTC's claims.

The enrollment agreement—which is a GCU document and does not reflect any representation by GCE—outlines the twenty "Required Program Major Courses" that a student must complete to earn a doctorate in business administration. As clearly expressed in the document, these are the minimum "required" courses. It also states in **bold** lettering in the middle of the same page that "**A *minimum* of 60 credits are required for completion of this program of study.**" (Compl. ¶ 52) (bold in original; italics added). By definition, "minimum" reflects the least number of credits required, not the most. In other words, GCU designed a program that *can* be completed in 60 credit hours, which is the fastest degree track. Defendants never represented that students were guaranteed to complete their required coursework and their dissertation in those 60 credit hours. The FTC's conclusory allegations of deceptive representations simply do not square with the actual representations made.

The FTC's reliance on the Course List on GCU's website fares no better. The website discloses the minimum number of courses required (60 credits) and does not make any statements that doctoral degrees are "typically" completed in twenty courses or 60 credits. Listing the minimum courses on the website cannot be reasonably read to suggest that students typically complete their degree in twenty courses or 60 credits, especially given the FTC's admission that Defendants "represent that GCU's College of Doctoral Studies will award individuals who complete the prescribed courses **and** produce a dissertation of academic quality research in their chosen field." (Compl. ¶ 52) (emphasis added).

The Complaint's allegation that unspecified Defendants train telemarketers to inform prospective students that the GCU program "***could*** be completed a lot faster than" a "typical

---

[5] Though not a basis of this motion, GCE understands that GCU actually loses money on continuation classes. There is no incentive—financial or otherwise—to "require" students to take continuation courses. Students enroll in continuation courses if they need additional time and support to complete their dissertation.

seven-year doctorate" similarly fails. (Compl. ¶ 54) (emphasis added). Once again, this assertion stands as factually accurate. As the Complaint acknowledges, the program *could* be completed more quickly than seven years depending on a student's aptitude, diligence, and the time and resources the student has to dedicate toward coursework and his or her dissertation. Contrary to the FTC's allegations, these representations regarding GCU's doctoral programs unequivocally lack any element of deception.

The Eleventh Circuit reached a similar conclusion in *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861 (11th Cir. 2023). There, a former GCU doctoral student alleged that GCU promised in its enrollment agreement that students would finish their doctoral degrees in 60 credit hours. *Id.* at 868. After reviewing the same statements at issue here, the district court dismissed the plaintiff's claim, and the Eleventh Circuit affirmed. In its decision, the Eleventh Circuit explained that the statements in GCU's enrollment agreements are not misleading:

> "Mr. Young fails to point to any provision in any of the relevant documents promising that a student will complete his doctoral degree program in 60 (and no more than 60) credit hours. This is because the documents belie any such promise. For example, the Enrollment Agreement states that "[a] *minimum* of 60 credits are required for completion of this program of study." And the fast track reflected in the Optimal Progression Point column of the Dissertation Milestone Table is not guaranteed. It merely reflects a potential path to completion if a doctoral candidate puts forth maximum effort and succeeds at each relevant stage. Mr. Young cannot state a claim for breach of contract on his 60-hour theory absent language promising such an outcome."

*Id.* at 871 (record citations omitted). As the Eleventh Circuit recognized in *Young*, representations about a "potential path to completion" of a GCU doctoral degree do not guarantee that outcome. *Id.* It is not deceptive for Defendants to provide truthful information to prospective students about basic program requirements. If Plaintiff's claims were viable, students across the country would sue nearly every school whenever the student failed to complete a degree program within the minimum number of credits required by the school.

At their core, doctoral studies programs are notoriously rigorous, and GCU's doctoral programs are no exception. That some students may require more courses than the minimum number of courses to earn a degree does not render statements about the minimum

requirements deceptive.[6]

**2. GCE Did Not Misrepresent the Tuition and Cost For A GCU Doctoral Program.**

The FTC has also failed to allege an actionable representation—or any representation at all—by GCE regarding tuition and costs for GCU's doctoral programs. The FTC cites only to the enrollment agreement's statements about tuition, but those are not GCE's documents or statements. (Compl. ¶ 53). Accordingly, any information in those documents does not reflect an alleged representation by GCE. Even assuming that the representations in those agreements could somehow be attributed to GCE, there is still no basis for a claim.

The FTC's tuition allegations are based on "***estimates*** of tuition costs for doctoral programs . . . based on the cost for 60 credits." (Compl. ¶ 53) (emphasis added). As is clear from the Complaint, the estimate is based on a published "cost per credit" value that is centrally displayed on the enrollment agreement. (Compl. ¶ 52). It is inherent in the concept of an "estimate" that there may be variables that cause the estimate to fluctuate. Moreover, prospective students are provided with the information they need to calculate the cost of additional coursework beyond the minimum 60-credit requirement. There is nothing false or deceptive about this information.

The FTC has, thus, failed to identify an actionable representation to support Count II.

**E. The FTC Has Failed to Plead Counts I, II, and III with Particularity.**

Claims for violation of Section 5(a) of the FTC Act—and by extension the TSR—"sound in fraud" and are, therefore, subject to a heightened pleading standard under Rule 9(b). *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) (claims for violation of

[6] The FTC also alleges in support of Count II that Defendants market GCU doctoral programs that place students "on an accelerated path that will prepare you to succeed in your academic journey and career." (Compl. ¶ 50). That language says nothing about how many credit hours, classes, or tuition expenses it takes to earn a degree and is not an actionable representation under the FTC Act. At most, it is advertising puffery, which is nonactionable under the FTC Act. *See, e.g.*, *FTC v. Lights of Am. Inc.*, No. SACV 10-1333 JVS (MLGx), 2012 U.S. Dist. LEXIS 199754, at *24 (C.D. Cal. Apr. 25, 2012) (granting summary judgment for defendant where alleged violation of FTC Act amounted to mere advertising puff).

Section 5(a) of the FTC Act "sound in fraud") (granting motion to dismiss for failure to meet 9(b) particularity requirements); *see also Prime Mktg. Holdings*, 2016 U.S. Dist. LEXIS 194873 at *6 (finding that the heightened pleading standard of Rule 9(b) applied to TSR claims because they sounded in fraud); *FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 U.S. Dist. LEXIS 126110, *4 (D. Ariz. 2013) (applying 9(b) to FTC claims alleging telemarketers made "representations" that are "false").

A claim "sounds in fraud" where a plaintiff "allege[s] a unified course of fraudulent conduct" that forms the basis of its claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1100 (9th Cir. 2003). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id*. at 1105. For example, in *Lights of America*, the FTC alleged that the defendants violated the FTC Act by distributing promotional materials with false and misleading information about the specifications of defendants' LED lamp products. 760 F. Supp. 2d at 852-53. The *Lights of America* court held that the FTC's Section 5(a) claim "sound[ed] in fraud" because the "gravamen of these allegations is that the [defendants] engaged in a unified course of fraudulent conduct" to misrepresent the nature of the LED lamp products. *Id.* at 853 (granting motion to dismiss for failure to plead fraud with particularity).

Here, like in *Lights of America*, the FTC has alleged that "Defendants" have made misleading representations about a product—GCU's educational services—in connection with the advertising, marketing, or promotion of those services. (Compl. ¶¶ 71, 72, 88). Even though the FTC does not use the word "fraud" in its allegations, "[t]he FTC's omission of the 'magic word'—fraud—from its Complaint does not detract from the apparently fraudulent nature of the allegations." *Lights of Am.*, 760 F. Supp. 2d at 853 (quoting *Vess*, 317 F.3d at 1108). The FTC's allegations are undeniably "grounded in fraud" and are subject to Rule 9(b)'s heightened pleading requirement. *Vess*, 317 F.3d at 1108; *FTC v. D-Link Sys*., No. 3:17-cv-00039-JD, 2017 U.S. Dist. LEXIS 152319, at *4-5 (N.D. Cal. Sept. 19, 2017) ("The FTC's deception claims are premised on […] misleading statements to consumers, and so Rule

9(b) must apply to them.”).[7]

The heightened pleading requirement in Rule 9(b) requires a plaintiff to plead the who, what, when, where, and why of the fraud. A plaintiff's allegations must be “specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.” *FTC v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 U.S. Dist. LEXIS 80341, at *24-25 (D. Nev. 2013) (quoting *Vess,* 317 F.3d at 1108). The Complaint falls woefully short of satisfying Rule 9(b) on several grounds.

The FTC does not identify which Defendant engaged in which conduct. “Rule 9(b) does not allow a complaint to merely lump multiple defendants together.” *FTC v. QYK Brands LLC*, No. SACV 20-1431 PSG (KESx), 2021 U.S. Dist. LEXIS 229942, at *6 (C.D. Cal. Nov. 30, 2021) (applying 9(b) pleading standard to FTC Act claims) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)). But the Complaint improperly lumps GCE, GCU, and Brian Mueller together in a series of allegations directed at “Defendants.” *See, e.g.*, Compl. ¶¶ 9, 21-22, 24, 29, 40-45, 47, 49-55, 59, 62-65, 68, 70, 71, 86-88, 90-92. In each of these instances, the context of the allegation suggests that the allegation may be directed at just one defendant—the defendant who made the alleged representation or omission. And yet, the Complaint fails to identify the relevant party.

Additionally, the Complaint fails to identify the relevant context for the alleged misrepresentations. For example, the Complaint alleges that “Defendants” have described GCU's doctoral programs as “accelerated” programs, but the Complaint does not identify the time, place, or context in which the alleged statement was made. (Compl. ¶ 50). In another paragraph, the Complaint alleges statements by unidentified telemarketers trained by unspecified “Defendants” without any specificity of who made the statements, when such statements were made, or who trained the unidentified telemarketers. (Compl. ¶ 54). The Complaint further alleges that unspecified “Defendants” (once again, referenced

---

[7] Moreover, the TSR is promulgated under the Telemarketing and Consumer ***Fraud*** and Abuse Prevention Act, 15 U.S.C. § 6105 (emphasis added).

indistinguishably) distributed materials containing false or misleading statements. (Compl. ¶¶ 51-53). In short, it is impossible to discern *who* the FTC alleges engaged in the challenged conduct or made the alleged representations—much less *when* or *where* the alleged representations were made.

Counts I, II, and III of the Complaint, thus, fail for the independent reason that they fall short of Rule 9(b)'s heightened pleading requirement. *See Lights of Am.*, 760 F. Supp. 2d at 854-55 (C.D. Cal. 2010) (granting motion to dismiss Section 5 claim for failure to satisfy Rule because "[t]he allegations do not differentiate between conduct committed by [each defendant], nor do they explain when or where the alleged misrepresentations were made.").

## V. **CONCLUSION**

For these reasons, GCE requests that the Court grant its Partial Motion to Dismiss and dismiss Counts I, II, and III from the Complaint.

Respectfully submitted this 9th day of February 2024.

/s/ *Derin B. Dickerson*

Derin B. Dickerson, GA Bar #220620*
Kathleen Benway, DC Bar #474356*
Caroline R. Strumph, GA Bar #250168*
Shanique Campbell, GA Bar #346659*
Lisa L. Garcia, CA Bar #301362*
*(*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

*Attorneys for Defendant Grand Canyon Education, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February 2024, I caused to be electronically transmitted the attached document entitled GRAND CANYON EDUCATION, INC.'S PARTIAL MOTION TO DISMISS AND MEMORANDUM IN SUPPORT to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all registered CM/ECF users.

*/s/ Derin B. Dickerson*
Derin B. Dickerson