1   MICHAEL E. TANKERSLEY (DC Bar # 411978)
    mtankersley@ftc.gov
2   NAOMI TAKAGI (NY Bar # 5217252)
    ntakagi@ftc.gov
3   BRIAN BERGGREN (CA Bar # 279279)
    bberggren@ftc.gov
4   Federal Trade Commission
    600 Pennsylvania Avenue NW
5   Mail Stop CC-6316
    Washington, DC 20580
6   Telephone: (202) 326-2991 (Tankersley)
                (202) 326-3668 (Takagi)
7               (202) 326-3229 (Berggren)

8   Attorneys for Plaintiff
    FEDERAL TRADE COMMISSION
9

10                  UNITED STATES DISTRICT COURT

11                      DISTRICT OF ARIZONA

12  Federal Trade Commission,              No. CV-23-02711-PHX-DWL

13              Plaintiff,

14         v.                              **PLAINTIFF FEDERAL TRADE
                                           COMMISSION'S OPPOSITION TO
15  Grand Canyon Education, Inc., *et al.*, DEFENDANTS' MOTIONS TO
                                           DISMISS**
16              Defendants.

17

18

19

20

21

22

23

24

25

26

1

# <u>TABLE OF CONTENTS</u>

2  TABLE OF CONTENTS ....................................................................................i

3  TABLE OF AUTHORITIES............................................................................ii

4  INTRODUCTION............................................................................................1

5  APPLICABLE LEGAL STANDARD............................................................2

6  I.    THE COMPLAINT ALLEGES THAT GCU IS NOT A BONA FIDE
7         NONPROFIT AND, THEREFORE, IS COVERED BY SECTION 4 OF THE
       FTC ACT................................................................................................3

8         A.  GCU Is Not a Nonprofit ..............................................................3

9         B.  GCU Is Liable for Violations of the FTC Act..............................4

10  II.   THE COMPLAINT ALLEGES UNLAWFUL DECEPTION IN VIOLATION
11         OF THE FTC ACT AND THE TSR......................................................8

12         A.  Defendants Deceptively Marketed GCU As a Nonprofit University...........9

13         B.  Defendants Deceptively Market Doctoral Programs .................13

14         C.  Rule 9(b) Does Not Apply to the Complaint, and Even If It Did, the
             Complaint's Allegations Satisfy the Rule ................................18

15  III.  THE COMPLAINT STATES A CLAIM FOR RELIEF AGAINST
16         DEFENDANT MUELLER ..................................................................22

17  IV.   DEFENDANTS' CONSTITUTIONAL ARGUMENTS ARE FORECLOSED
         BY BINDING PRECEDENT ...........................................................25

18  CONCLUSION ...............................................................................................27

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**Cases**

*Airlie Found., Inc. v. United States,*
   826 F. Supp. 537 (D.D.C. 1993) .......................................................................4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................2

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
   140 S. Ct. 2335 (2020) ...................................................................................25

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .........................................................................................2

*Church By Mail, Inc. v. C.I.R.,*
   765 F.2d 1387 (9th Cir. 1985) ..........................................................................4

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021) ...................................................................................25

*Cmty. Blood Bank of the Kansas City Area v. FTC,*
   405 F.2d 1011 (8th Cir. 1969) .......................................................................4, 6

*CFPB v. CashCall, Inc.,*
   35 F.4th 734 (9th Cir. 2022) .....................................................................25, 26

*CFPB v. Law Offices of Crystal Moroney,*
   63 F.4th 174 (2d Cir. 2023) ............................................................................26

*D Stadtler Tr. 2015 Tr. v. Gorrie,*
   2023 WL 2503642 (D. Ariz. Mar. 14, 2023) ...................................19, 21, 23

*Daniel Chapter One v. FTC,*
   405 F. App'x 505 (D.C. Cir. 2010) ..................................................................5

*Decker Coal Co. v. Pehringer,*
   8 F.4th 1123 (9th Cir. 2021) ...........................................................................26

*Empress LLC v. City & Cty. of San Francisco,*
   419 F.3d 1052 (9th Cir. 2005) ........................................................................18

*Fanning v. FTC,*
   821 F.3d 164 (1st Cir. 2016) .............................................................................8

*FTC v. Adept Mgmt., Inc.,*
   2016 WL 6542837 (D. Or. Nov. 3, 2016) .....................................................21

*FTC v. Affiliate Strategies, Inc.,*
   849 F. Supp. 2d 1085 (D. Kan. 2011) ............................................................21

*FTC v. Am. Nat'l Cellular*,
810 F.2d 1511 (9th Cir. 1987) ................................................................. 26

*FTC v. AmeriDebt, Inc.*,
343 F. Supp. 2d 451 (D. Md. 2004) ....................................................... 5, 6

*FTC v. Benning*,
2010 WL 2605178 (N.D. Cal. June 28, 2010) ......................................... 23

*FTC v. Commerce Planet, Inc.*,
2010 WL 11673796 (C.D. Cal. Feb. 12, 2010) ......................................... 23

*FTC v. Cyberspace.com LLC*,
453 F.3d 1196 (9th Cir. 2006) .............................................................. 8, 9

*FTC v. DeVry Educ. Grp., Inc.*,
2016 WL 6821112 (C.D. Cal. May 9, 2016) ........................................ 15, 20

*FTC v. ELH Consulting, LLC*,
2013 WL 4759267 (D. Ariz. Sept. 4, 2013) ........................................ 20, 21

*FTC v. Fin. Educ. Servs.*,
2023 WL 8101841 (E.D. Mich. Nov. 21, 2023) ....................................... 6, 7

*FTC v. Five-Star Auto Club, Inc.*,
97 F. Supp. 2d 502 (S.D.N.Y. 2000) ....................................................... 15

*FTC v. Fleetcor Techs.*,
620 F. Supp. 3d 1268 (N.D. Ga. 2022) ................................................... 16

*FTC v. Freecom Comms., Inc.*,
401 F.3d 1192 (10th Cir. 2005) ......................................................... 18, 24

*FTC v. Gill*,
71 F. Supp. 2d 1030 (C.D. Cal. 1999) .................................................... 16

*FTC v. Grant Connect LLC*,
763 F.3d 1094 (9th Cir. 2014) ............................................................... 23

*FTC v. Kochava Inc.*,
2023 WL 3249809 (D. Idaho May 4, 2023) ............................................. 26

*FTC v. Lights of Am. Inc.*,
2011 WL 1515158 (C.D. Cal. Mar. 31, 2011) .......................................... 22

*FTC v. Medical Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008) ..................................................... 16

*FTC v. Mortg. Relief Advocates LLC*,
2015 WL 11257575 (C.D. Cal. July 1, 2015) ........................................... 12

*FTC v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) ................................................................ 8

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ................................................................ 21

*FTC v. Student Aid Ctr., Inc.*,
  281 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................ 19

*FTC v. Roomster Corp.*,
  654 F. Supp. 3d 244 (S.D.N.Y. 2023) .................................................. 25

*FTC v. Walmart Inc.*,
  664 F. Supp. 3d 808 (N.D. Ill. 2023) ................................................... 25

*FTC v. Washington Data Res.*,
  856 F. Supp. 2d 1247 (M.D. Fla. 2012) .............................................. 9

*George v. C.I.R.*,
  837 F.3d 79 (1st Cir. 2016) ................................................................... 7

*Glob. Fin. Invs., LLC. v. Sewell*,
  2005 WL 8160691 (D. Ariz. Aug. 26, 2005) ....................................... 21

*Grand Canyon Univ. v. Cardona*,
  2022 WL 18456049 (D. Ariz. 2022) .............................. 7, 10, 11, 12, 22

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ........................................................................ 26, 27

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) .............................................................. 26

*Integrity Advance, LLC v. CFPB*,
  48 F.4th 1161 (10th Cir. 2022) ............................................................ 26

*Kaufmann v. Kijakazi*,
  32 F.4th 843 (9th Cir. 2022) ................................................................ 25

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................ 2, 10

*Polacsek v. Debticated Consumer Counseling, Inc.*,
  413 F. Supp. 2d 539 (D. Md. 2005) ...................................................... 7

*Presbyterian & Reformed Pub. Co. v. C.I.R.*,
  743 F.2d 148 (3d Cir. 1984) .................................................................. 5

*Removatron Int'l Corp. v. FTC*,
  884 F.2d 1489 (1st Cir. 1989) ........................................................... 9, 17

*Resort Car Rental Sys., Inc. v. FTC*,
    518 F.2d 962 (9th Cir. 1975)...................................................................................8

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ...............................................................................25, 26, 27

*Sterling Drug, Inc. v. FTC*,
    741 F.2d 1146 (9th Cir. 1984)...................................................................................8

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) .................................................................................................18

*United Cancer Council, Inc. v. C.I.R.*,
    165 F.3d 1173 (7th Cir. 1999)...................................................................................3

*United States v. Consumer Law Prot., LLC*,
    2023 WL 6200774 (E.D. Mo. Sept. 22, 2023) ........................................................19

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011)...................................................................................22

*United States v. MyLife.com, Inc.*,
    499 F. Supp. 3d 751 (C.D. Cal. 2020).....................................................................24

*United States v. UnitedHealthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016)...........................................................................20, 23

*Wool v. Tandem Computers Inc.*,
    818 F.2d 1433 (9th Cir. 1987)..................................................................................20

*Young v. Grand Canyon Univ., Inc.*,
    57 F.4th 861 (11th Cir. 2023)............................................................................17, 18

*Zimmerman v. Cambridge Credit Counseling Corp.*,
    409 F.3d 473 (1st Cir. 2005) ..................................................................................6, 7

**Statutes**

15 U.S.C. § 44 ...............................................................................................4, 5, 7, 24

15 U.S.C. § 45 .........................................................................................................8

15 U.S.C. § 1679a(3)(B)(i)......................................................................................7

26 U.S.C. § 6110(k)(3)............................................................................................7

**Rules**

Fed. R. Civ. P. 8(a)(2) .............................................................................................2

Fed. R. Civ. P. 9(b)............................................................................................18-22

Fed. R. Civ. P. 12 ...................................................................................................5

Fed. R. Civ. P. 12(b)(6) ..................................................................................10, 16

**Regulations**

16 C.F.R. § 310.3(a)(2) ...............................................................................8, 9, 14

34 C.F.R. Part 75 .................................................................................................13

34 C.F.R. § 600.20(b) ..........................................................................................13

34 C.F.R. § 668.71(b) ..........................................................................................13

**Agency Authorities**

*Coll. Football Ass'n,*
    117 F.T.C. 971, 1994 WL 16011007 (1994)................................................4, 5

*Intuit Inc.,*
    __ F.T.C. __, 2024 WL 382358 (2024)..........................................................14

*Daniel Chapter One,*
    148 F.T.C. 1063, 2009 WL 2584873 (2009)....................................................5

*Thompson Medical Co.,*
    104 F.T.C. 648, 1984 WL 565377 (1984).........................................................8

Rev. Proc. 2024-5 (IRS RPR),
    2024-1 I.R.B. 262, 2024 WL 24041 .................................................................7

**Articles**

Henry B. Hansmann, *The Role of Nonprofit Enterprise*, 89 Y ALE L. J. 835 (1980)..........5

1

**<u>INTRODUCTION</u>**

2       The Federal Trade Commission ("FTC") brings this action against Grand Canyon

3 Education, Inc. ("GCE"), a company that markets postsecondary educational services

4 online and through telemarketing.  The FTC's complaint also names GCE's CEO and

5 Chairman of the Board, Brian Mueller, and Grand Canyon University ("GCU"), a

6 company GCE and Mueller created to reorganize GCE's operations and to rebrand as a

7 nonprofit the educational services GCE sells.  The complaint alleges that, although GCE

8 and Mueller created and operate GCU for the profit of GCE and its investors—including

9 Mueller, who is also President of GCU—Defendants have deceptively advertised the

10 school to prospective students as a nonprofit.  The complaint also states that GCE's

11 marketing activities on behalf of GCU have resulted in millions of abusive telemarketing

12 calls to consumers who have specifically requested that Defendants not solicit them, and

13 illegal calls to individuals on the National Do Not Call Registry.  In addition, GCE's

14 marketing includes representations that GCU provides "accelerated" doctoral programs

15 requiring twenty courses (or 60 credits) and "Total Program Tuition and Fees" of about

16 $40,000.  In fact, Grand Canyon University requires almost all doctoral students to take

17 many more "continuation courses" that add thousands of dollars to the costs.

18       Defendants' motions to dismiss should be denied because they mischaracterize

19 the FTC's allegations and urge the Court to accept Defendants' own self-serving

20 narrative.  In this opposition, we first address GCU's argument that, even if it engages in

21 deceptive marketing, its claim that it is a nonprofit shields it from FTC enforcement.

22 Contrary to GCU's claim, the FTC Act authorizes action against corporations like GCU

23 that *purport* to be nonprofits but are organized to advance the pecuniary interests of

24 officers and related for-profit businesses such as Mueller and GCE.

25       Second, we address Defendants' arguments that the complaint's allegations are

26 not sufficient to state claims that Defendants have engaged in deceptive conduct.

1 Defendants' arguments are meritless because the complaint describes, with specificity

2 and examples, how GCE, marketing on behalf of GCU, deceptively exploits the non-

3 profit label and misrepresents GCU's doctoral programs to consumers.

4       Finally, we show that two arguments made solely in the motion by GCU and

5 Mueller are foreclosed by Ninth Circuit precedent.  Corporate officers in Mueller's

6 position are liable for misconduct of their corporations; further, the argument that the

7 FTC may not bring enforcement actions is foreclosed by multiple decisions holding a

8 defendants' challenge to officer removal provisions does not provide a basis for such

9 relief.  Moreover, Supreme Court precedent confirms the constitutionality of the removal

10 provision for the multi-member FTC.

11 **APPLICABLE LEGAL STANDARD**

12       In deciding a motion to dismiss, the court "must take all of the factual allegations

13 in the complaint as true."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, it

14 must construe those allegations in the light most favorable to the nonmoving party.  *Lee*

15 *v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  Rule 8(a), the general rule of

16 pleading, states that a pleading must contain "a short and plain statement of the claim

17 showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "does not

18 require 'detailed factual allegations.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic*

19 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, a court considering a motion to

20 dismiss considers whether the complaint alleges "enough facts to state a claim to relief

21 that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A plaintiff need only "plead[]

22 factual content that allows the court to draw the reasonable inference that the defendant

23 is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

24

25

26

## I. THE COMPLAINT ALLEGES THAT GCU IS NOT A BONA FIDE NONPROFIT AND, THEREFORE, IS COVERED BY SECTION 4 OF THE FTC ACT

### A. GCU Is Not a Nonprofit

The complaint alleges that the representation in GCU's articles of incorporation that the corporation is "organized and operated exclusively for charitable, religious and scientific purposes," is false because the corporation (then named "Gazelle University"), was organized by GCE and Mueller to advance GCE's for-profit business and Mueller's interests as officer and GCE stockholder.  Compl. (ECF 25) ¶ 13.  The complaint includes additional facts on how Defendants realized these goals.  GCE had developed the University as a for-profit for a decade when Defendant Mueller formulated a plan to characterize it as a nonprofit, chartered the purported nonprofit, and became its President.  *Id.* ¶¶ 10, 11, 12.  GCE and its officers orchestrated a series of transactions under which GCE, since July 1, 2018, has been the exclusive provider of marketing services for GCU and receives 60% of its revenue—including charitable donations and revenue from operations to which GCE does not contribute.  *Id.* ¶¶ 5, 14, 15, 16.  This arrangement in which the majority of GCU revenue is siphoned-off to GCE benefited, and continues to generate profit for, GCE and its stockholders – including Mueller, who heads GCE, receives bonuses based on its performance for investors, and owns GCE stock of significant value.  *Id.* ¶¶ 12, 18, 19.

These allegations are more than sufficient to state a claim that GCU is a for-profit entity because it was organized to, and does, benefit its for-profit founder, GCE, and President, Defendant Mueller.  A genuine nonprofit does not "siphon its earnings to its founder, or the members of its board, or their families, or anyone else fairly to be described as an insider."  *United Cancer Council, Inc. v. C.I.R.*, 165 F.3d 1173, 1176 (7th Cir. 1999).  The benefits to insiders need not be direct payments; an entity

1  organized so that its creator or a "particular individual or limited number of individuals
2  reap commercial benefits from the operation" is a for-profit organization.  *Airlie Found.,*
3  *Inc. v. United States*, 826 F. Supp. 537, 550 (D.D.C. 1993) (internal quotation marks
4  omitted).  And a corporation organized with the goal of generating revenue for a for-
5  profit entity or the individuals behind the corporation is not a bona fide nonprofit.  *See*
6  *Church By Mail, Inc. v. CIR*, 765 F.2d 1387, 1391-92 (9th Cir. 1985).

7  **B.      GCU Is Liable for Violations of the FTC Act**

8         The allegations that GCU is organized to advance the interests of its principal
9  officer and founding for-profit also confirm that it is a "Corporation" under Section 4 of
10  the FTC Act.  15 U.S.C. § 44.  Section 4 gives the FTC authority over "any company. . .
11  which is organized to carry on business for its own profit or that of its members."  *Id.*
12  The phrase "organized to carry on business for its own profit" in Section 4 authorizes the
13  Commission to proceed against any legal entity "which engages in business for profit
14  within the traditional and generally accepted meaning of the word."  *Cmty. Blood Bank*
15  *of Kansas City Area v. FTC*, 405 F.2d 1011, 1016-18 (8th Cir. 1969).

16         Decisions applying this provision examine both "whether the corporation is
17  'organized and actually engaged in business for only charitable purposes,'" and "the
18  destination of the income."  *Coll. Football Ass'n*, 117 F.T.C. 971, 994, 1994 WL
19  16011007 (1994) (quoting *Cmty. Blood Bank*, 405 F.2d at 1022).  "[T]he distribution of
20  funds to private persons or for-profit companies as opposed to their use for 'recognized
21  public purposes' is one basis for finding an entity to be 'organized to carry on business
22  for . . . profit.'"  *Coll. Football Ass'n*, 117 F.T.C. at 993; *see also id*. at 1001 (test is
23  satisfied if "no part of [the entity's] revenues inures to the benefit of private individuals

24

25

26

1    or for-profit businesses.").[1]  Accordingly, the FTC is authorized to act against

2    companies, like GCU, that purport to be nonprofit, but are organized to promote a for-

3    profit business or funnel income to officers or other insiders.  *See, e.g.*, *Daniel Chapter*

4    *One*, 148 F.T.C. 1063, 1072-1075, 2009 WL 5160000, at *11-12 (2009), *aff'd sub. nom.*

5    *Daniel Chapter One v. FTC*, 405 F. App'x 505, 506 (D.C. Cir. 2010) (holding that

6    because organization "operates, in substance, as a for-profit entity generating sales

7    revenue and providing 'far more than *de minimis* or merely presumed economic benefits'

8    to [the defendant] and his wife, the Commission had jurisdiction."); *FTC v. AmeriDebt,*

9    *Inc.*, 343 F. Supp. 2d 451, 460-61 (D. Md. 2004) (denying motion to dismiss by

10   purported nonprofit, after examining "whether the entity is organized as a non-profit; the

11   manner in which it uses and distributes realized profit; its provision of charitable

12   purposes as a primary or secondary goal; and its use of non-profit status as an

13   instrumentality of individuals or others seeking monetary gain").[2]

14           The decisions construing the Commission's authority under 15 U.S.C. § 44 have

15   also uniformly held that its authority is not dependent on state corporation filings or IRS

16   status.  The statute authorizes the FTC to act against "so-called nonprofit corporations

---

[1] Both considerations—the purposes for which the company is organized and the destination of the income—are features of corporate law that predate both the FTC Act and tax-exemption under the Internal Revenue Code.  *See Coll. Football Ass'n*, 117 F.T.C. at 995 n.7; *Presbyterian & Reformed Pub. Co. v. C.I.R.*, 743 F.2d 148, 153 (3d Cir. 1984) ("The policy underpinnings of the non-inurement rule derive from the common law belief that charities should promote the public good rather than private benefit."); Henry B. Hansmann, *The Role of Nonprofit Enterprise*, 89 Yale L. J. 835, 838-39 (1980) (describing alternative state approaches to identifying nonprofits based on prohibition on distribution of profits, prohibition on being formed or operated for pecuniary gain, or restricting to a specified list of purposes).  Decisions construing 15 U.S.C. § 44 have looked to the tax code exemptions for nonprofit corporations as helpful, but not controlling, in applying both inquiries.  *See Coll. Football Ass'n*, 117 F.T.C. at 994.

[2] Although Defendants' motion refers to the issue of whether the "Corporation" definition applies to GCU as a question of "jurisdiction," it is not an issue of subject matter or personal jurisdiction under Fed. R. Civ. P. 12.  *AmeriDebt*, 343 F. Supp. 2d at 460.

. . . if they are in fact profit-making enterprises," and "the charter of the corporation and its statutory source" are not "controlling." *Cmty. Blood Bank*, 405 F.2d at 1018-19. "Congress did not intend to provide a blanket exclusion of all non-profit corporations, for it was also aware that corporations ostensibly organized not-for-profit . . . were merely vehicles through which a pecuniary profit could be realized for themselves or their members." *Id.* at 1017. GCE's observation that Arizona and IRS statutes reference nonprofit or tax-exempt status (GCE Mot. (ECF 30-1) at 6), is beside the point; those statutes do not supplant the FTC's authority. No decision has disputed the holding in *Cmty. Blood Bank,* 405 F.2d at 1018-19, that a state charter does not control whether an entity is subject to FTC enforcement authority. The FTC Act contains no reference to the IRS classification of a corporation, and courts have repeatedly held that IRS classification of an entity as a charitable corporation is not a shield against an FTC action. Accordingly, in *FTC v. Fin. Educ. Servs.*, No. 22-CV-11120, 2023 WL 8101841 (E.D. Mich. Nov. 21, 2023), the court denied a motion by a defendant that, like GCU, asserted that nonprofit status under the Internal Revenue Code and state laws require that the FTC's complaint be dismissed. The court ruled that the complaint's allegations that it carried on business for its own profit were "sufficient to plausibly demonstrate that [the defendant] operates as a for-profit business within the FTC Act's jurisdiction." *Id.* at *3; *accord AmeriDebt*, 343 F. Supp. 2d at 460 ("Although AmeriDebt is incorporated as a non-stock corporation with tax-exempt status, the Court finds this insufficient to insulate it from the regulatory coverage of the FTC Act.").

The result in these cases is in accord with similar decisions holding that IRS classification as a 501(c)(3) organization is not determinative of non-profit status. In *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005), the First Circuit recognized that IRS determinations are based on limited information and not dispositive of whether the entity is, in fact, a nonprofit. *Id.* at 476-77 (rejecting

1   argument that tax exempt status precludes claim that organization is not a nonprofit

2   under 15 U.S.C. § 1679a(3)(B)(i)); *accord Fin. Educ. Servs.*, 2023 WL 8101841, at *5

3   (following *Zimmerman*); *George v. C.I.R.*, 837 F.3d 79, 83 (1st Cir. 2016) (as IRS grants

4   501(c)(3) applications based on unverified representations, status is of no consequence at

5   trial); *Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 550 (D.

6   Md. 2005) (IRS status is not dispositive of whether statutory nonprofit exemption

7   applies; court must consider how defendants "truly functioned").[3]  Judge Bolton reached

8   the same conclusion in rejecting GCU's claims that IRS classification was dispositive of

9   its status under the Higher Education Act.  *Grand Canyon Univ. v. Cardona*, No. CV-21-

10  00177-PHX-SRB, 2022 WL 18456049, at *9 (D. Ariz. Dec. 1, 2022).  GCU's argument

11  that the Court should nonetheless regard its state charter and IRS status as dispositive

12  under the FTC Act is untenable.

13      GCU's motion ignores all these authorities, including the cases specifically

14  construing 15 U.S.C. § 44.  Instead, GCU's motion rests on assertions that the

15  allegations that GCU is organized to profit GCE and Mueller are insufficient because the

16  FTC has no authority unless GCE or Mueller are "identical to GCU" or are designated

17  "members" of GCU.  GCU Mot. (ECF 27) at 7.  This argument is meritless because

18  nothing in the statute requires that GCU, GCE, and Mueller be identical to conclude that

19  GCU—like other for-profit entities—was founded to benefit insiders.  Nor does the

20  statute limit the FTC's authority to companies that exclusively profit members.  As the

21  decisions above recognize, a company that is organized to provide income and other

22

23  [3] IRS letters regarding 501(c)(3) status are expressly limited to the record submitted to the agency by the applicant, and are not precedential, even for the IRS.  *See* 26 U.S.C.

24  § 6110(k)(3) ("[A] written determination [by the IRS] may not be used or cited as precedent.");  Rev. Proc. 2024-5 (IRS RPR), 2024-1 I.R.B. 262, 2024 WL 24041,

25  §§ 3.05, 11.02.  The IRS may change its position by notifying the applicant, and retroactively revoke a determination based on a material change, or material omission or

26  inaccurate representation.  *Id.* §§ 12.01, 12.03.

1  benefits to insiders is organized to "carry-on business for its own profit."  The complaint

2  squarely alleges that GCU is such a company.

3  **II.    THE COMPLAINT ALLEGES UNLAWFUL DECEPTION IN**

4  **VIOLATION OF THE FTC ACT AND THE TSR**

5        The complaint alleges violations of the FTC Act's prohibition on deceptive

6  practices (Counts I and II), 15 U.S.C. § 45, and provisions of the Telemarketing Sales

7  Rule ("TSR"), that prohibit misrepresentations in the course of telemarketing, 16 C.F.R.

8  § 310.3(a)(2) (Count III).  To state a claim that Defendants engaged in deceptive acts or

9  practices, the FTC must allege that Defendants made a material representation likely to

10  mislead consumers acting reasonably under the circumstances.  *FTC v. Pantron I Corp.*,

11  33 F.3d 1088, 1095 (9th Cir. 1994).  Express claims are presumed material.  *Id.* at 1095-

12  96; *Thompson Medical Co.*, 104 F.T.C. 648, 788-89, 1984 WL 565377 (1984), *aff'd*, 791

13  F.2d 189 (D.C. Cir. 1986).  Implied claims are presumptively material where they are

14  intentional or concern a central characteristic of the product or service offered.  *See*

15  *Fanning v. FTC,* 821 F.3d 164, 172-73 (1st Cir. 2016).  "A misleading impression

16  created by a solicitation is material if it 'involves information that is important to

17  consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"

18  *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (citation omitted).

19        If a claim conveys more than one meaning, and a substantial number of

20  consumers are likely to take away a misleading interpretation, the seller is liable even if

21  non-misleading interpretations are possible.  *Fanning,* 821 F.3d at 170-71.  In addition, a

22  solicitation that omits material information can be deceptive, even if it does not state

23  false facts.  *See Sterling Drug, Inc. v. FTC,* 741 F.2d 1146, 1154 (9th Cir. 1984).  The

24  deception may not be cured merely by the inclusion of small-print disclaimers,

25  *Cyberspace.com,* 453 F.3d at 1200, or if consumers later become fully informed of the

26  facts.  *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975).

- 8 -

1    The TSR prohibits misrepresenting, directly or by implication, certain material

2    information in the sale of goods or services in telemarketing.  Its prohibitions include

3    misrepresenting "[a]ny material aspect of the performance, efficacy, nature, or central

4    characteristics of goods or services that are the subject of a sales offer" or the "total costs

5    to purchase, receive, or use" such goods or services.  16 C.F.R. § 310.3(a)(2)(i), (iii).

6    Allegations that actions are deceptive under the TSR are evaluated under the same

7    principles of deception as claims under the FTC Act.  *FTC v. Washington Data Res.*, 856

8    F. Supp. 2d 1247, 1273 (M.D. Fla. 2012)*.*  The FTC need not allege that defendants

9    acted with intent to defraud or deceive consumers to state a claim under the FTC Act or

10   the TSR.  *See Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989).

11   **A.    Defendants Deceptively Marketed GCU As a Nonprofit University**

12   The complaint alleges that GCE's creation of GCU and subsequent agreements

13   were an effort to rebrand the University as a nonprofit.  This effort culminated in

14   advertising and telemarketing solicitations explicitly representing GCU as a private

15   "nonprofit" university that had gone "Back to Non-Profit Roots" and "transitioned back

16   to a nonprofit institution."  Compl. (ECF 25) ¶¶ 7, 11, 21, 22.  As described above, the

17   complaint sets forth numerous facts supporting its allegation that GCU's representation

18   that it was a nonprofit is false.  *See supra* at 3.  Similarly, the complaint alleges that the

19   representation that GCU had returned to its nonprofit "roots" is false; the July 2018

20   restructuring by GCE did not return the school to its 2004 structure.  Compl. (ECF 25)

21   ¶ 20.

22   These allegations identify express, calculated representations regarding the nature

23   of GCU.  The law presumes that such express and intentional representations are

24   material, but the complaint goes further; it adds that, after these representations began

25   appearing in 2018, Defendant Mueller told GCE investors that the nonprofit claims

26   provided a tremendous advantage "just because of how many students didn't pick up the

1  phone because we were for-profit." *Id.* ¶ 23.a.  Defendants discontinued most of the

2  nonprofit representations when the Department of Education directed them to cease

3  advertising or notices that refer to its nonprofit status. *Id.* ¶ 24.  GCU then brought suit

4  in this Court, asserting that it was being harmed by not being permitted to market itself

5  as a nonprofit, thereby acknowledging the materiality of the nonprofit label in its

6  marketing. *Id.* ¶ 26; *Cardona*, 2022 WL 18456049, at *18.

7          Defendants' arguments that the complaint fails to state a claim consist mainly of

8  unsupported assertions, denials, and disregard for the rule that a motion under Rule

9  12(b)(6) may not rest on material outside the complaint. *See* GCU Mot. (ECF 27) at 9-

10  11; GCE Mot. (ECF 30-1) at 4-6.  Material outside the pleadings or disputed assertions

11  are, by definition, improper grounds for moving to dismiss. *See Lee*, 250 F.3d at 688.

12  Thus, Defendants' arguments that the allegedly deceptive statements are "truthful . . .

13  because GCU was (and is), in fact a nonprofit, tax-exempt entity" (GCE Mot. (ECF 30-

14  1) at 6), and claims that material outside the complaint vindicate Defendants' position

15  (GCU Mot. (ECF 27) at 1, 8-9, 10 n.4, 11 n.53), provide no basis for disregarding the

16  complaint's allegations that Defendants' marketing is misleading.

17          Defendants also assert that dismissal is required because GCU's filings with the

18  State of Arizona, IRS categorization, and accrediting agency documents identifying it as

19  a nonprofit render its representations "indisputably" true.  GCU Mot. (ECF 27) at 8-9;

20  GCE Mot. (ECF 30-1) at 5-6).[4]  The misrepresentation identified in the complaint,

21

---

22  [4] Defendants have requested that the court take judicial notice of such material (Request for Judicial Notice, ECF 30-2; Corporate Articles, ECF 27-1; IRS Letter, 27-2), but
23  judicial notice only establishes the existence of such documents and does not extend to the truth of the statements therein or facts that may reasonably be disputed. *Lee*, 250
24  F.3d at 689.  Consequently, judicial notice of these materials provides no support for moving to dismissing the FTC's complaint, as its allegations are taken to be true.
25  Moreover, this court has ruled that an agency may reasonably conclude GCU should not be permitted to label itself a nonprofit. *Cardona*, 2022 WL 18456049, at *13-15, 17-19
26

1   however, is not that GCU drafted and filed articles as a nonprofit, could accept donations

2   as a 501(c)(3) organization, or received accreditation.  The complaint alleges Defendants

3   violated the law when, in solicitations directed to prospective students, they deceptively

4   represented GCU to be a private, "nonprofit" university that had transitioned back to its

5   nonprofit "roots."  Compl. (ECF 25) ¶¶ 21, 68, 88.  The documents to which Defendants

6   refer do not refute those allegations and, as discussed above, courts have repeatedly

7   rejected arguments that state filings or IRS categorizations are determinative of whether

8   an entity is a nonprofit.  *See supra* at 6.  Moreover, giving decisive weight to the

9   documents Defendants reference would not be justified.  GCU's articles of incorporation

10  (GCU Mot. (ECF 27)-1) simply recite its false claim that it is operated "exclusively for

11  charitable, religious and scientific purposes," and a printout from the Arizona

12  Corporation Commission's web page (ECF 30-2, at 2) merely reflects that GCU's filings

13  contain this assertion.  The 2015 IRS letter regarding the tax status of Gazelle University

14  (ECF 30-3; ECF 27-2) is predicated on material authored and selected by Defendants

15  years before publishing the misleading GCU advertising identified in the complaint.

16  None of these materials give Defendants license to deceptively market the school as a

17  nonprofit when, as alleged in the complaint, it is not.

18         Defendants also argue that the complaint is fatally flawed because it does not

19  elaborate on why consumers regard the representations to be material.  GCE Mot. (ECF

20  _____

21  (concluding Department of Education decision to reject GCU position was not arbitrary,
    capricious, or contrary to law).  GCE's Exhibit B, moreover, is not the database entry

22  described in its request, but a GCU legal memorandum.  *Compare* ECF 30-2 and
    proposed order, ECF 30-6, with GCE Exhibit B, ECF-30-4.  Neither the document filed

23  nor the document GCE intended to file warrant judicial notice of the proposition that
    GCU is a nonprofit.

24  GCU asserts the court should also take judicial notice of three GCU marketing
    documents, but provides no authentication or context for these materials, and does not

25  articulate a justification for affording them judicial notice.  *See* GCU Proposed Order,
    ECF 28.  These marketing materials do not contradict the complaint, much less warrant

26  not treating the complaint's allegations as true.  *See infra* note 7.

30-1) at 1, 4, 7-8; GCU Mot. (ECF 27) at 9.  No elaboration is required, as express representations, intentional representations, and representations about the central characteristics of a service are presumed to be material.  *FTC v. Mortg. Relief Advocates LLC*, No. CV-14-5434-MWF (AGRx), 2015 WL 11257575, at *2 (C.D. Cal. July 1, 2015).  Moreover, Defendant Mueller's statements that "being out there now a million times a day saying we're non-profit" boosted GCE's recruiting even more than he expected demonstrates that Defendants re-branded the school precisely because they expected the nonprofit label to boost sales.[5]

Finally, GCE asserts that Department of Education regulations authorized it to advertise GCU as a nonprofit from July 2018 to November 2019.  GCE Mot. (ECF 30-1) at 6-7 (citing 34 C.F.R. § 75.51).  During this period, the Department was actively questioning GCU's claims, an inquiry that resulted in its conclusion that advertising that refers to GCU's "nonprofit status" was confusing to students and the public.  Compl. (ECF 25) ¶ 24; *Cardona*, 2022 WL 18456049, at *4-5, 18.  GCE's argument further fails for several reasons.  First, the regulation GCE cites does not immunize false advertising, or even discuss marketing; it simply says that applicants to the Department's direct grant program may point to IRS and state tax records to show they are eligible to apply for grants reserved for nonprofits.  *See* 34 C.F.R. Part 75, Direct Grant Programs, Subpart A. Separate Department of Education regulations address deceptive marketing by institutions like GCU, and those regulations in fact forbid a "substantial misrepresentation about the nature of [a school's] educational program, its financial

---

[5] Defendants' arguments on this point are also inconsistent with GCU's claims in *GCU v. Cardona* that conversion to a nonprofit is desirable because for-profit institutions have been "vilified" by critics, and the Department of Education's decision barring it from characterizing itself as a nonprofit "unfairly disparage[s] the quality of GCU's educational offerings."  GCE Mot. Exhibit B (ECF 30-4), GCU motion in *GCU v. Cardona*, at 1, 30.  GCU's contention that the public views it more favorably when it characterizes itself as a nonprofit concedes materiality.

charges, or the employability of its graduates."  34 C.F.R. § 668.71(b).  Second, nothing

in the Department's inquiry into GCU's application to be considered a nonprofit

compelled or permitted GCU to market itself as a nonprofit while the Department

reviewed GCU's claims.  *See* 34 C.F.R. § 600.20(b) (procedures for applying for

eligibility).  Lastly, nothing in the Department's review process supports GCE's claim

that it was entitled to treat marketing describing GCU as a nonprofit that had returned to

its roots as "truthful statements that are not misleading to prospective students," GCE

Mot. (ECF 30-1) at 6, unless and until the Department formally declared that GCU's

claims were deceptive.[6]

### B.    Defendants Deceptively Market Doctoral Programs

The complaint alleges that GCU markets doctoral programs as requiring only

twenty courses (60 credits), despite the fact that more than half of the students that

graduate must complete thirty courses.  Compl. (ECF 25) ¶¶ 60.c., 62.  For only a small

fraction of graduates (1.5%) has GCU allowed completion of the program in twenty

courses, representing 60 credits.  *Id.* ¶ 60.  GCU requires the 98.5% who are not in this

small minority to take "continuation courses" that substantially increase the cost of

pursuing the degree.  *Id.* ¶¶ 56, 60, 61.  In marketing these programs, however,

Defendants describe these programs as "accelerated" doctoral programs, list just twenty

courses, and identify the cost of the program as the cost of twenty courses.  *Id.* ¶¶ 9, 49,

50, 51.  The complaint specifically identifies multiple ways in which Defendants have

disseminated these descriptions of the program, including:

- Course lists that state: "Total Degree Requirements: 60 credits"

---

[6] GCU and Mueller falsely assert that "the Department conceded that GCU is an IRS 501(c)(3) tax-exempt entity and an Arizona nonprofit."  GCU Mot. (ECF 27-1) at 9.  In fact, the document Defendants cite for this assertion shows the Department took no position on GCU's 501(c)(3) status, or statements GCU may make about that status, and observed that Arizona law does not require separate approval to operate as a nonprofit.

1       • Enrollment agreements that list twenty courses, state "Total Program

2         Credits 60," and "Total Tuition Program and Fees:" followed by a dollar

3         figure based on the tuition and fees for twenty courses.

4       • Telemarketing pitches in which the doctoral program is described as "20

5         courses, which is 60 credits."

6 *Id.* ¶¶ 51-55.  The statements identified do not refer to initial courses, or state that the

7 credit and cost sums listed are partial tallies.  Moreover, they "do not list the

8 continuation courses that GCU typically requires of doctoral candidates and do not

9 include the credits or costs associated with such courses."  *Id.* ¶ 59.  In addition, the

10 complaint states that Defendants sometimes communicate to prospective students that

11 the twenty courses are not the complete program, but such communications appear in

12 buried disclaimers, are themselves misleading statements, or distort the program

13 requirements.  *Id.* ¶ 63.  As an example, the complaint identifies Defendants' statement

14 that "on average, doctoral students who graduated required 5.2 continuation courses to

15 complete their doctoral degree," and states that this statement is itself deceptive because

16 the average number GCU required was more than twice this number.  *Id.*

17      The complaint alleges that these representations regarding the number of courses

18 and credits required for a degree, and the total cost, violate both the FTC Act and the

19 TSR.  *Id.* ¶¶ 71-73, 88.c-d, 89.  The TSR specifically prohibits misrepresentation of

20 material information about the total cost to purchase a service, or its nature and central

21 characteristics, 16 C.F.R. § 310.3(a)(2), and the complaint states Defendants used

22 precisely such misrepresentations in their telemarketing campaign.  More generally,

23 solicitations are misleading when they feature statements about the cost, benefits, or

24 results of a product or service that are, in fact, rarely if ever available to consumers.

25 *Intuit Inc.*, __ F.T.C. __, 2024 WL 382358 (Jan. 22, 2024) (representations that service

26 was free for "simple returns" was deceptive where most consumers would not qualify).

1   Representations that create false expectations by describing atypical outcomes are

2   deceptive.  *See, e.g.*, *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 528

3   (S.D.N.Y. 2000) (marketing materials were deceptive where reasonable consumer could

4   conclude that results were achieved by typical participants).

5          Defendants' arguments that the complaint's allegations concerning the doctoral

6   program are not sufficient to support claims under the FTC Act or the TSR ignores the

7   actual content of the complaint.  GCE dismisses the allegations as "conclusory," but they

8   plainly are not.  The allegations in complaint Paragraphs 71 and 88 that Defendants

9   "directly or indirectly, expressly or by implication" have misrepresented that doctoral

10  programs are typically completed "in twenty courses or 60 credits" and have also

11  misrepresented the "total charges for doctoral degrees" summarize the complaint's

12  description of multiple channels of written and oral communications in which

13  Defendants conveyed these misrepresentations to prospective students.  Compl. (ECF

14  25) ¶¶ 50-63.

15         Defendants also miss the mark when they argue that the complaint must be

16  dismissed because their materials do not have the term "typically" in the description of

17  total costs, courses, or credits, and the representations "unequivocally lack any element

18  of deception" if these results are possible, albeit exceedingly rare.  GCE Mot. (ECF 30-

19  1) at 8, 10; GCU Mot (ECF 27) at 2, 11-12.  A representation that is literally true may

20  still be misleading.  *See FTC v. DeVry Educ. Grp., Inc.*, No. CV-16-00579-MWF-SSX,

21  2016 WL 6821112, at *4-5 (C.D. Cal. May 9, 2016).  As the complaint alleges,

22  Defendants use terms such as "Total Program Credits" and "Total Tuition and Fees,"

23  along with catalogues and charts that did not account for the additional costs and courses

24  GCU required of 98.5% graduating doctoral students.  These allegations and the

25  accompanying examples, taken as true pursuant to Rule 12(b)(6), describe deceptive

26  practices likely to mislead reasonable consumers.

1   GCE also protests that no deception is alleged because the complaint does not

2   state that "students were guaranteed to complete their required coursework and their

3   dissertation in those 60 credits." GCE Mot. (ECF 30-1) at 9.  No such allegation is

4   necessary; even without the word "guarantee," misleading statements about cost or

5   outcome are deceptive. *See FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999)

6   (lack of a "guarantee" in challenged statements does not negate that they were

7   misleading); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 304-07

8   (S.D.N.Y. 2008) (deceptive representations creating impression that typical purchaser

9   earned $50,000 a year were not cured by qualifying statements that purchasers "could"

10  make, or "could expect," to achieve such results).

11       Defendants argue that the complaint fails to state a claim because their materials

12  contain disclaimers that convey that the statements that a doctoral program is "20

13  courses" does not mean GCU does not require additional courses, and statements about

14  "Total" costs and credits do not mean the numbers given represent totals—and no

15  reasonable person could have failed to understand that the 20 courses, 60 credits, and

16  total cost statements do not mean what they say.  GCU Mot. (ECF 27) at 2, 12; GCE

17  Mot. (ECF 30-1) at 9, 11.  The premise of Defendants' argument, namely that false

18  representations are not actionable if contradicting statements appear later, is wrong as a

19  matter of law. *FTC v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1298-99 (N.D. Ga.

20  2022) ("But post-hoc disclosures cannot cure earlier misleading representations"; citing

21  cases).  Disclaimers do not alter liability for deceptive statements "unless they are

22  sufficiently prominent and unambiguous to change the apparent meaning of the claims

23  and to leave an accurate impression." *Removatron*, 884 F.2d at 1497. Moreover, the

24

25

26

1   complaint states that, to the extent such disclaimers were communicated, they were

2   buried or misleading.  Compl. (ECF 25) ¶ 63.  This allegation is to be taken as true.[7]

3           Defendants' reliance on *Young v. Grand Canyon, Inc.*, 57 F.4th 861 (11th Cir.

4   2023) (GCE Mot. (ECF 30-1) at 10; GCU Mot. (ECF 27) at 12), is inapposite because

5   that decision did not address the FTC Act, or the TSR, or the allegations in the complaint

6   before this Court.  Moreover, Defendants mischaracterize the decision by describing it as

7   a ruling on "essentially the same claim the FTC alleges," and a determination that

8   GCU's documents "are not 'deceptive' as a matter of law."  GCU Mot. (ECF 27) at 2;

9   GCE Mot. (ECF 30-1) at 10 (asserting the Circuit court explained GCU agreements are

10  "not misleading").  The opinion shows these descriptions are false.  The *Young* court

11  reviewed a complaint on behalf of an individual student that included two breach of

12  contract counts, and held that a count alleging GCU breached its contractual obligation

13  to provide him with the faculty resources and guidance he needed to complete his

14  dissertation should not have been dismissed, but that Young had not identified a

15  *contractual* promise that he would complete a degree within 60 credits.  *Young*, 57 F.4th

16  at 866-67, 869-74.  Young also pleaded a separate claim for intentional

17  misrepresentation in violation of the Arizona Consumer Fraud Act, and the court held

18  that his complaint lacked sufficient particularity because it contained only "generalized

19

20  _____

21  [7] GCU and Mueller append three documents to bolster their opposition on this issue, none of which are authenticated or given factual context.  *See* GCU Mot. Exs. C, D, E (ECF 27-3, 27-4 and 27-5). One of these submissions is a document excerpted as an

22  example in the complaint (compare Compl. (ECF 25) ¶ 52 with GCU Mot. Ex. C (ECF 27-3) at 7).  Although Defendants argue that this document is exculpatory, it only

23  confirms the allegations of the complaint.  Eight pages after the statements of "Total Program Credits" and "Total Program Tuition and Fees," on a page otherwise unrelated

24  to courses, credits, or costs, the document contains the statement: "As of March 2017, since program inception, on average, doctoral students who graduated required 5.2

25  continuation courses to complete their doctoral degree."  ECF 27-3 at 15.  The complaint alleges that, to the extent Defendants used such disclaimers, they were not prominent

26  and compounded the deception with a misleading average.  Compl. (ECF 25) ¶ 63.

1   assertions" and "does not point to any other precise statements, documents, or

2   misrepresentations." *Id.* at 876.  The court did not rule that any GCU materials or

3   statements were not deceptive when it observed that Young's complaint lacked

4   specificity.  Moreover, because Young failed to point to specific statements, his

5   complaint is not comparable to the FTC's allegations here that Defendants' marketing

6   materials are inconsistent with the fact that GCU rarely awards degrees based on the

7   courses and tuition described as "Total," and that Defendants publish misleading

8   statements on continuation courses.  *See* Compl. (ECF 25) ¶¶ 60, 61, 63, 64.[8]

9       **C.      Rule 9(b) Does Not Apply to the Complaint, and Even If It Did, the**

10           **Complaint's Allegations Satisfy the Rule**

11      Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with

12   particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

13   Defendants argue that the Rule should be extended to FTC enforcement actions (ECF

14   30-1 at 11-12).  The Supreme Court, however, has observed that Rule 9(b) is a limited

15   exception, and its requirement for particularity does not extend to other contexts.  *See*

16   *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002); *see also Empress LLC v. City*

17   *& Cty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) ("a heightened pleading

18   standard should only be applied when the Federal Rules of Civil Procedure so require").

19   Courts have repeatedly held that Rule 9(b)'s exception does not apply to actions

20   enforcing the FTC Act and the TSR because they are distinguishable from fraud and

21   mistake.  *See FTC v. Freecom Comms., Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005);

22

23   _____

    [8] Defendants also suggest that they cannot be held liable for deception because doctoral
24   programs are "rigorous" and the disparity between the twenty courses and the number of
    courses GCU requires for the vast majority of graduates is attributable to students'
    varying abilities.  GCU Mot. (ECF 27) at 4; GCE Mot. (ECF 30-1) at 10.  These
25   assertions are directly contrary to the complaint, which alleges that the duration of these
    programs depends, in substantial part, on GCU's requirements, actions, and inaction.
26   Compl. (ECF 25) ¶ 58.

1    *United States v. Consumer Law Prot., LLC*, No. 4:22 CV 1243 JMB, 2023 WL 6200774,

2    at *3 (E.D. Mo. Sept. 22, 2023) (citing cases holding Rule inapplicable in FTC actions);

3    *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016)

4    (acknowledging split before concluding Rule 9(b) is inapplicable to FTC Act and TSR

5    counts).  As the Tenth Circuit observed, an FTC action is "not a private or common law

6    fraud action designed to remedy a singular harm, but a government action brought to

7    deter deceptive acts and practices aimed at the public and to obtain redress."  *Freecom*,

8    401 F.3d at 1204 n.7.  "Unlike the elements of common law fraud, the FTC need not

9    prove scienter, reliance, or injury."  *Id.*  Thus, a violation of Section 5 of the FTC Act "is

10   not a claim of fraud as that term is commonly understood or as contemplated by Rule

11   9(b)."  *Id.*[9]

12          Moreover, even if Rule 9(b) extends to FTC enforcement actions that do not

13   allege fraud or mistake, the Rule does not provide grounds for dismissal here because the

14   FTC's complaint provides sufficient detail to satisfy this Circuit's test for particularity;

15   namely, do the allegations identify the misconduct so that defendant can prepare an

16   adequate answer?  *D Stadtler Tr. 2015 Tr. v. Gorrie*, No. CV-22-00314-PHX-DWL,

17   2023 WL 2503642, at *52 (D. Ariz. Mar. 14, 2023).  Indeed, Defendants' motions

18   indicate that they are well aware of the conduct described in the complaint, have litigated

19   other suits related to this misconduct, and have developed an array of excuses for the

20   alleged misrepresentations.  *See, e.g.*, GCU Mot. (ECF 27) at 3, 4, 8-9, 12-13; GCE Mot.

21   (ECF 30-1) at 3, 5-6, 9, 10.  The Ninth Circuit has not ruled on whether Rule 9(b)

22   applies to FTC actions and district courts have found it unnecessary to decide the issue

23   where, as here, the FTC's complaint provides ample specificity regarding the acts or

24

25   ────────────────

26   [9] None of the Defendants argue that Rule 9(b) is applicable to Counts IV and V, which
     allege Defendants are responsible for abusive telemarketing calls that violate the TSR.

1    practices alleged.at issue.  *See, e.g.*, *DeVry Educ. Grp.*, 2016 WL 6821112; *FTC v. ELH*

2    *Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 4759267 (D. Ariz. Sept. 4,

3    2013).

4         Rule 9(b) does not require recitation of evidence or precise details; "'statements

5    of the time, place and nature of the alleged fraudulent activities are sufficient.'"  *United*

6    *States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Wool*

7    *v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).  The complaint need

8    not identify representative samples to support every allegation.  *Id.* at 1180, 1183.  The

9    allegations must identify the role of each defendant in the alleged fraudulent scheme, but

10   may also contain collective allegations that defendants engaged in the same conduct.  *Id.*

11   at 1184.

12        The FTC's complaint satisfies these standards:  It specifies a timeframe, identifies

13   the challenged representations, and describes how they were used by GCE in marketing

14   on behalf of GCU that GCE conducted online and through telemarketing.  Compl. (ECF

15   25) ¶¶ 21, 22, 24, 29, 30, 49-55, 63, 64.  Rule 9(b) requires no more where the complaint

16   is not for fraud, but deceptive acts and telemarketing misconduct.   Moreover, contrary

17   to Defendants' claims, the complaint describes the role of each defendant in the

18   deceptive practices: GCE, as the exclusive marketer for GCU, induces consumers to

19   purchase educational services through nationwide marketing campaigns.  *Id.* ¶¶ 5, 28.

20   GCE is responsible for communicating with prospective students regarding applications,

21   program requirements, and financing.  *Id.* ¶ 15.  GCE employs hundreds of sales

22   representatives, who identify themselves as GCU counselors; solicit prospective students

23   through a variety of means, including telemarketing; and are responsible for describing

24   the central characteristics of GCU to prospective students and the requirements, cost and

25   projected length of GCU's educational programs.  *Id.* ¶ 30.  GCE is responsible for

26   deceptive practices of its employees, and GCU is responsible as seller and principal for

the misconduct of its telemarketer. *Id.* ¶¶ 78, 84-87. Under the FTC Act and the TSR, principals are liable for the actions of their agents, and sellers are responsible for violations by telemarketers. *See FTC v. Stefanchik,* 559 F.3d 924, 930-31 (9th Cir. 2009). Defendant Mueller is the principal officer of both GCU and GCE, Compl. ¶ 7, and consequently, is responsible for violations attributable to either company. *See infra* at 22.

As this Court has observed, Rule 9(b) does not preclude allegations that attribute misrepresentations to parties generally or require repeating on whose behalf the misrepresentations were made. *D Stadtler Tr.*, 2023 WL 2503642, at *52. Such a requirement "would require 9(b) to carry more weight than it was meant to bear." *Id.* A complaint that identifies the defendants, "categorizes those defendants based on their function in the alleged scheme," and sets forth "specific representations allegedly made by defendants," is sufficient to allow those defendants to answer and satisfies Rule 9(b). *ELH Consulting*, 2013 WL 4759267, at *2; *accord FTC v. Adept Mgmt., Inc.*, No. 1:16-CV-00720-CL, 2016 WL 6542837, at *2 (D. Or. Nov. 3, 2016) (complaint satisfies Rule 9(b) where it categorizes defendants based on their function in the alleged scheme); *Glob. Fin. Invs., LLC. v. Sewell*, No. CIV 04-1465 PHX JWS, 2005 WL 8160691, at *4 (D. Ariz. Aug. 26, 2005) (for allegations of misleading group-published information, identifying possible roles of defendants in the misrepresentations satisfies Rule 9(b)).

GCE repeatedly makes a curious (and incorrect) argument that it cannot, as a matter of law, be held responsible for alleged misrepresentations in materials it considers to be GCU documents. GCE Mot. (ECF 30-1) at 9, 11. GCE does not offer any evidence showing it had no responsibility for the documents, and the complaint need not allege that GCE was the author or owner to state a claim. Agents, including telemarketers, are liable for misrepresentations, regardless of whether their misconduct is directed by their principal. *See, e.g.*, *FTC v. Affiliate Strategies, Inc.*, 849 F. Supp. 2d

1    1085, 1104-07, 1114-15 (D. Kan. 2011) (telemarketers liable for misrepresentations in

2    scripts provided by seller).  The complaint alleges GCE is "the exclusive provider of

3    marketing for GCU and services related to communicating with prospective GCU

4    students regarding applications, program requirements, and financing options," and GCE

5    sales representatives are responsible for soliciting prospective students and informing

6    them about GCU programs—including topics covered by the deception allegations.

7    Compl. (ECF 25) ¶¶ 15, 30.  GCE is liable for its misconduct in performing these

8    activities, including deceptive statements in enrollment agreements, catalogues, charts,

9    or estimates of costs—regardless of whether GCU initiated or directed the misleading

10   statements.

11         Finally, Defendants GCU and Mueller assert that Rule 9(b)'s heightened pleading

12   standard also requires particularized pleading of materiality and consumer injury.  GCU

13   Mot. (ECF 27) at 10.  It plainly does not; as Rule 9(b) states, it requires particularity

14   regarding the "circumstances constituting the fraud."  Rule 8 applies to other elements.

15   *See FTC v. Lights of Am. Inc.*, No. SACV 10-1333, 2011 WL 1515158, at *3 (C.D. Cal.

16   Mar. 31, 2011) (allegations concerning knowledge and damages are not subject to

17   Rule 9).[10]

18   **III.   THE COMPLAINT STATES A CLAIM FOR RELIEF AGAINST**

19          **DEFENDANT MUELLER**

20         The FTC's complaint properly alleges the liability of Defendant Mueller.  To

21   obtain relief against an individual, the FTC must show that the individual either had the

22   authority to control the unlawful activities or participated directly in them.  *See FTC v.*

23

24   [10] If the Court were to conclude that further allegations are required in this complaint,
     leave to amend would be the proper remedy.  *United States v. Corinthian Colleges*, 655

25   F.3d 984, 995 (9th Cir. 2011).  GCU's assertion that leave to amend would be "futile" —
     referencing arguments it made in *GCU v. Cardona*—ignores both the rule that the

26   complaint allegations are to be taken as true, and the outcome of that proceeding.

1   *Grant Connect LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014).  An allegation that the

2   individual has assumed the duties and authority of chief executive alone demonstrates

3   that it is plausible that the individual had the requisite authority.  *See FTC v. Commerce*

4   *Planet, Inc.*, No. SACV 09-01324CJC(RNBX), 2010 WL 11673796, at *2 (C.D. Cal.

5   Feb. 12, 2010).  Here, the complaint alleges that Defendant Mueller held multiple

6   positions of authority—at GCU, he is President,; at GCE, he is Chief Executive Officer,

7   Chairman of the Board and a director—and, in these positions of authority, he

8   "formulated, directed, controlled, had the authority to control, or participated in the acts

9   and practices" of GCU and GCE described in the complaint.  Compl. (ECF 25) ¶ 7.

10  Contrary to the assertions in Mueller's motion to dismiss (GCU Mot. (ECF 27) at 14-

11  15), the complaint elaborates on Mueller's role:  He "directed GCE's efforts to re-brand

12  the university as a nonprofit and promoted representations that the July 2018 division of

13  operations between GCE and GCU resulted in the University returning to operation as a

14  traditional nonprofit university," *id.* ¶¶ 7, 11; he boasted to investors that the re-branding

15  boosted recruiting "because of how many students didn't pick up the phone because we

16  were for-profit.  *Id.* ¶ 23.a.[11]

17

18

---

[11] Defendant Mueller's argument that Rule 9(b) requires allegations regarding his
knowledge, GCU Mot. (ECF 27) at 15, is also misplaced.  Rule 9(b)'s particularity
requirement does not extend to the elements of knowledge and authority to control.
Thus, even in actions where Rule 9(b) is applicable, allegations of these elements need
not be pleaded with heightened specificity.  *See United Healthcare*, 848 F.3d at 1180,
1184; *D Stadtler Tr*, 2023 WL 2503642, at *59 (malice, intent, knowledge, and other
condition of mind of a person may be averred generally.); *FTC v. Benning*, No. C 09-
03814 RS, 2010 WL 2605178, at *4 (N.D. Cal. June 28, 2010) (denying defendant's
motion to dismiss because knowledge and control may be averred generally).  Moreover,
the complaint alleges that all of the Defendants continued the misconduct alleged despite
complaints, lawsuits, and investigations by the Department of Education and the FTC,
and engaged in these acts "knowing that their representations were misleading and their
telemarketing practices did not comply with the restrictions on abusive telemarketing
practices."  Compl. (ECF 25) ¶ 65.a-e.

---

1    These facts, taken as true, more than satisfy the requirements to hold Defendant

2  Mueller liable for the misconduct by GCE and GCU.  Mueller's citation of *FTC v. Swish*

3  *Mktg.* (GCU Mot. (ECF 27) at 14), is unavailing because this complaint elaborates on

4  Mueller's role.  *See United States v. MyLife.com, Inc.*, 499 F.Supp.3d 751, 756 (C.D.

5  Cal. 2020) (distinguishing *Swish Mktg.*).

6    Insofar as Defendant Mueller asserts that the FTC must allege personal

7  involvement, control, *and* knowledge or reckless indifference, GCU Mot. (ECF 27) at 2,

8  13-15, he misstates the law.  Where a complaint states a claim for corporate liability, the

9  FTC may also bring an action against an individual if he "participated directly in the

10  business entity's deceptive acts or practices, *or had the authority to control* such acts or

11  practices."  *Freecom*, 401 F.3d at 1204 (emphasis in original); *accord MyLife.com, Inc.*,

12  499 F.Supp.3d at 756.

13    Defendant Mueller also asserts dismissal is appropriate because the complaint

14  does not "adequately allege corporate violations of the FTC Act or the [TSR] for reasons

15  stated above and in GCE's motion to dismiss."  GCU Mot. (ECF 27) at 14.  GCE does

16  not argue, however, that the allegations of abusive telemarketing fail to state the claims

17  presented in Counts IV and V.  GCE Mot. (ECF 30-1) at 1 n.1.  And as discussed above,

18  GCE's arguments that the complaint does not properly plead Counts I, II, and III are

19  meritless.  *See supra* at 8-22.  Thus, even if GCU were not a defendant, all five counts

20  state claims against Mueller for the misconduct of GCE.  Moreover, even if GCU's

21  contention that it is outside the scope of 15 U.S.C. § 44 as a matter of law had validity

22  (which it does not), it would not shield Mueller from liability for GCE's misconduct in

23  deceptively marketing on behalf of GCU and making abusive telemarketing calls.

24

25

26

IV.   **DEFENDANTS' CONSTITUTIONAL ARGUMENTS ARE FORECLOSED
BY BINDING PRECEDENT**

Defendant GCU and Mueller present a constitutional attack premised on the claim that the FTC Act's provisions on removal of Commissioners violate Article II of the constitution.  GCU Mot. (ECF 27) at 15-17.  The challenge fails for two independent reasons.

First, to prevail on a claim that agency removal provisions violate Article II, litigants must show how the allegedly "'unconstitutional removal provision *actually harmed*'" them.  *CFPB v. CashCall, Inc*., 35 F.4th 734, 742-43 (9th Cir. 2022) (quoting *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022)) (emphasis in original).  Numerous cases, including those cited in Defendants' motion, have held that if a limitation on officer removal provision is unconstitutional, the problematic removal provision is severable, and the remaining portions of the statute remain intact.  *See, e.g.*, *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2350-52 (2020) (plurality opinion) (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), and other examples).  Consequently, Defendants' assertion that a successful challenge to the FTC removal protections would necessitate the wholesale dismissal of this and other FTC enforcement actions is meritless.  *See FTC v. Roomster Corp.*, 654 F. Supp. 3d 244, 260 (S.D.N.Y. 2023) (denying motion to dismiss by defendant making identical argument); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 845 (N.D. Ill. 2023) (FTC removal provision is severable, and constitutional challenge would not void FTC enforcement authority).

Defendants do not satisfy this requirement that a litigant that attempts to block an agency's action by contesting the validity of an officer removal provision must demonstrate it has been injured by the removal provision.  *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021).  In the context of an FTC enforcement action, this requires showing that (1) the President expressed a desire to remove the Commissioners but could not do

1   so, and (2) the enforcement proceeding resulted from the President's inability to remove

2   those officials.  *See CashCall*, 35 F.4th at 742-43; *accord Decker Coal Co. v. Pehringer*,

3   8 F.4th 1123, 1137 (9th Cir. 2021); *CFPB v. Law Offices of Crystal Moroney*, 63 F.4th

4   174, 180 (2d Cir. 2023) (removal clause challenge to enforcement action requires

5   defendant show action would not have been taken but for the President's inability to

6   remove); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022)

7   (claimant asserting administrative enforcement action is unconstitutional must show

8   compensable harm).  Because Defendants do not (and could not) make the requisite

9   showing, their challenge to the FTC's authority fails.

10         Second, Defendants' challenge to the FTC's removal provision is foreclosed by

11   Supreme Court and Ninth Circuit precedent that specifically addresses the

12   constitutionality of the FTC.  The Supreme Court upheld the FTC Act's restrictions in

13   *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and has rejected arguments

14   that it should declare the FTC's multi-member structure unconstitutional, including the

15   Defendants' arguments here about the Commission's litigation authority.  *See Illumina,*

16   *Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) ("While the Supreme Court has cabined

17   the reach of *Humphrey's Executor* in recent years, it has expressly declined to overrule

18   it.").  In 1987, the Ninth Circuit squarely addressed and rejected Defendants' argument

19   that amendments to the FTC Act in the 1970s require a different result and held that the

20   FTC's enforcement powers are constitutional under *Humphrey's Executor*.  *FTC v. Am.*

21   *Nat'l Cellular*, 810 F.2d 1511, 1513-14 (9th Cir. 1987); *accord FTC v. Kochava Inc.*,

22   No. 2:22-CV-00377-BLW, 2023 WL 3249809, at *12 (D. Idaho May 4, 2023) (Ninth

23   Circuit has rejected argument that FTC enforcement powers are unconstitutional).

24         Defendants' assertion that *Humphrey's Executor* is no longer valid is simply

25   wrong.  *Seila Law*, and other opinions Defendants cite, involved agency structures that

26   differ from those of the FTC.  *Seila Law*, 140 S. Ct. at 2201 (noting that the CFPB, a

- 26 -

new agency, presented "a new situation"). Moreover, in *Seila Law*, the Court decided to leave *Humphrey's Executor* in place. *Id.* at 2198 n.2. Although the Court ultimately chose to remedy the CFPB Director's unconstitutional removal protections by making the Director removable at will by the President, the Court noted that Congress was not foreclosed "from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency," *id.* at 2211, in other words, into an agency more like the FTC. Thus, *Humphrey's Executor* has not been overturned, and it forecloses Defendants' constitutional challenge.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss should be denied.

DATED: February 23, 2024          Respectfully submitted,

FEDERAL TRADE COMMISSION

By:  */s/ Michael E. Tankersley*
Michael E. Tankersley
Naomi Takagi
Brian Berggren
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
Telephone: (202) 326-2991
Email: mtankersley@ftc.gov

*Attorneys for Plaintiff*
*FEDERAL TRADE COMMISSION*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

        I hereby certify that on February 23, 2024, I electronically transmitted the

3

foregoing document(s), and all exhibits and documents attached thereto, to the Clerk's

4

Office using the CM/ECF System, which will send a notice of filing to all counsel of

5

record.

6

7                                                  */s/ Michael E. Tankersley*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS