Derin B. Dickerson GA Bar #220620 (Pro Hac Vice)
Caroline Rawls Strumph GA Bar #250168 (Pro Hac Vice)
Shanique C. Campbell GA Bar #346659 (Pro Hac Vice
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
derin.dickerson@alston.com
caroline.strumph@alston.com
shanique.campbell@alston.com

Kathleen Benway, DC Bar #474356 (Pro Hac Vice)
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3034
kathleen.benway@alston.com

Lisa L. Garcia CA Bar #301362 (Pro Hac Vice)
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
lisa.garcia@alston.com

Attorneys for Defendant Grand Canyon Education, Inc.

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff,<br><br>vs.<br><br>Grand Canyon Education, Inc.; Grand Canyon University, Inc.; and Brian E. Mueller,<br><br>Defendant. | Case No. 2:23-cv-02711-PHX-DWL<br><br>**GRAND CANYON EDUCATION INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS** |

# I.  INTRODUCTION

As Grand Canyon Education, Inc. ("GCE") established in its Partial Motion to Dismiss ("Motion"), the Federal Trade Commission (the "FTC") failed to state a claim as to Counts I, II, and III for violations of the FTC Act and the Telemarketing Sales Rule ("TSR"). The FTC's opposition, like its Complaint, employs imprecision to obfuscate the weaknesses of its claims. The FTC props up an interpretation of representations about GCU's nonprofit status and doctoral programs that is both unreasonable and implausible. The FTC then cites to its own manipulated reading of the representations as a basis to attack them as false. Rule 8, however, does not permit a plaintiff to draw unreasonable inferences to avoid dismissal.

In its opposition, the FTC argues that GCU is <u>not</u> a nonprofit because GCU revenue benefits and generates profits for GCE and its stockholders. But that is a specious argument, and the FTC fails to provide any support for the argument that an organization recognized by the IRS as a nonprofit is not a nonprofit organization. In fact, the cases cited in the FTC's opposition brief (the "Opposition") note that the FTC and the courts defer to an IRS determination that the organization qualifies as tax exempt under Section 501(c)(3). Next, the FTC argues that GCE misleadingly advertised the length and cost of doctoral programs because the majority of GCU students require more than 60 credits to complete their programs. But the statements that the FTC alleges are misleading contain explicit and clear disclosures stating that 60 credits is the <u>minimum</u> required to complete a doctoral program <u>and</u> that students must also produce a dissertation of academic quality research to graduate. There is nothing misleading about these statements.

Last, GCE established in its Motion that the FTC failed to plead its claims with particularity under Rule 9(b)'s heightened pleading standard because it does not identify which Defendant engaged in which conduct, merely lumping all three Defendants together. The FTC commits the same error in its "consolidated" Opposition that it filed in response to the separate Motions to Dismiss filed in this case—it lumps all Defendants together without differentiating which alleged representations each Defendant made. The FTC's supposition that Defendants must be "well aware" of the conduct described in the Complaint does not allow it to side-step

the pleading requirements. This is not merely a theoretical concern. Each Defendant is entitled to know which aspects of the FTC's claims are asserted against it, and each Defendant could be liable only for its own statements and conduct even if the FTC's claims had merit.

For the reasons outlined in the Motion and other reasons outlined below, GCE requests that the Court grant its Partial Motion to Dismiss Counts I, II, and III of the Complaint.

## II. THE FTC FAILS TO ALLEGE A VIOLATION OF THE FTC ACT OR TSR REGARDING REPRESENTATIONS ABOUT GCU'S NONPROFIT STATUS.

As established in GCE's Motion, the FTC failed to state a claim under the FTC Act or the TSR because: (i) it has not alleged any false representation or omission by GCE regarding GCU's nonprofit status, and (ii) it has not demonstrated that any alleged representation or omission related to GCU's nonprofit status by GCE was material to any consumer's decision to attend GCU. GCU is recognized as a nonprofit institution by the IRS, the State of Arizona, and the Higher Learning Commission ("HLC"); and the Department of Education's ("ED") determination for Title IV purposes does not alter the fact that GCU is a nonprofit, 501(c)(3) organization under the law. (Motion, pp. 5-6.)

### A. The FTC Fails to Allege Any False Representation Regarding GCU's Nonprofit Status.

In its Motion, GCE demonstrated that the FTC failed to adequately allege any false representations regarding GCU's nonprofit status. The FTC's Opposition does not cure this fatal deficiency because the FTC still has not identified any allegations supporting its argument that statements made by GCE regarding GCU's nonprofit status were false or misleading. Instead, the FTC merely references a handful of paragraphs in the Complaint that outline GCU's organizational history adorned with a conclusory statement that "GCU has been operated to carry on business for its own profit and that of its members." (Opposition, p. 3.) Conclusory allegations, however, run afoul of the Rule 8 pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Plaintiff's allegations regarding statements that GCU had gone "Back to Non-Profit Roots" are equally problematic. The FTC proffers its own unreasonable interpretation of this

phrase—that the school returned to its precise 2004 "structure"—and then declares it false. (Opposition, p. 9.) The alleged statement says nothing of the sort, and the FTC cannot state a claim for misrepresentation by deliberately imposing meaning to a statement that conflicts with the plain language of that statement and that no reasonable consumer would interpret that way. Indeed, a claim must be "plausible on its face," and a claim is plausible only when the facts plead allow the court to "draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 677. The Court should not draw the inference that reasonable consumers would be misled to think that GCU had adopted an identical structure to the one it possessed in 2004 (or even know what that structure was) when nothing about the statements at issue make that impression.

The FTC's attempt to disregard the contents of the IRS, Arizona Corporation Commission, and HLC records submitted with GCE's Motion is telling. Notably, the FTC does not dispute the truth or accuracy of the documents or that at the time of the alleged representations, every federal, state, and quasi-regulatory agency to opine on the issue recognized GCU as a nonprofit entity.[1] Instead, the FTC argues that the documents may only be used to establish the existence of such documents but not the truth of the statements therein. (Opposition, p. 10.) That, however, is not the law. The case the FTC relies upon, *Lee v. City of L.A.*, stands only for the unremarkable position that a court may not take judicial notice of a fact *that is subject to reasonable dispute*. 250 F.3d 668, 689 (9th Cir. 2001) (emphasis added). Where the fact *is not* subject to reasonable dispute, courts are free to take judicial notice of such undisputed matters of public record. *Id.* Here, it is undisputed that GCU is recognized as a nonprofit corporation by the IRS, State of Arizona, and HLC. The documents subject to the Request for Judicial Notice (Dkt 30-2) are therefore properly before the Court, and their contents can be considered.

---

[1] And the Complaint acknowledges that Defendants stopped referring to GCU as a nonprofit shortly after ED informed GCU of its decision not to recognize the school as a nonprofit for Title IV purposes. (Complaint ¶ 24). Defendants took this action in the spirit of cooperation despite disagreeing with ED's authority to determine whether GCU was a nonprofit.

The FTC attempts to avoid the unavoidable import of the documents by citing a handful of distinguishable cases. Rather than support its position, however, the cases the FTC cites confirm that "[i]n determining whether an organization is carrying on business for 'profit,' the Commission and the courts defer to an IRS determination that the organization qualifies as tax exempt under Section 501(c)(3)." *In re Coll. Football Ass'n*, 117 F.T.C. 971, 982–83 (1994).

The FTC also attempts in vain to explain away ED's explicit confirmation that an institution "may show that it is a nonprofit organization by . . . proof that the Internal Revenue Service currently recognizes" the institution as a 501(c)(3) entity. *See* 34 C.F.R. § 75.51. The FTC's misrepresentation claim falls apart given ED's acknowledgment that 501(c)(3) recognition is *proof* of nonprofit status. Rather than acknowledge this inescapable conclusion, the FTC makes up facts that are not in the Complaint, arguing that "the Department was actively questioning GCU's claims" during the period the nonprofit representations were made. (Opposition, p. 12.) The FTC, however, is not permitted to interject in an opposition to a motion to dismiss new facts that were not plead in the complaint. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition motion [. . .] are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Gagic v. Cty. of Maricopa*, No. CV-21-00037-PHX-MTL, 2021 U.S. Dist. LEXIS 66957, at *7 n. 4 (D. Az. Apr. 5, 2021) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . .") (internal quotation marks omitted). GCE cannot be held liable for truthful statements that were not misleading to prospective students because GCU was (and is), in fact, a nonprofit, tax-exempt entity.

### B. The FTC Fails to Allege That Any Representation Regarding GCU's Nonprofit Status Was Material.

GCE also established in its Motion that the FTC failed to allege that a misleading representation or omission was material to the consumer. (Motion, p. 7.) The FTC argues in

opposition that no elaboration is required because the allegedly misleading representation was express, intentional, and about the central characteristics of service. (Opposition, p. 12.) The FTC, however, misunderstands the materiality analysis and GCE's argument. The materiality analysis must focus on what is actually false regarding the representations at issue. The FTC does not (and cannot) dispute that GCU was recognized as a nonprofit institution by the State of Arizona and the IRS. GCU's indisputable nonprofit status in that context is undoubtedly material to prospective students' decisions because it affords certain benefits and rights that may be meaningful to some students. For example, tax-exempt universities enjoy more opportunities to participate in academic, grant writing, and research opportunities with peer institutions. The FTC must allege, however, that representations about GCU's nonprofit status gave the impression that GCU was a nonprofit for purposes of Title IV participation and that *that impression* was material to prospective students. The FTC has not met its burden because its theory is not plausible. In assessing the plausibility of the FTC's claim, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common sense does not allow the Court to assume that prospective students are somehow aware of the sole distinction between the way nonprofit and for-profit schools are treated under Title IV—an obscure regulation regarding the percentage of federal aid received by students attending an institution. It is even more implausible that such distinction would be material to a prospective student's decision to enroll because it would not impact their eligibility to receive financial aid under Title IV.

Moreover, this Court should reject the FTC's so-called "presumption" of materiality here. The FTC claims GCU's statement that it "transitioned back to nonprofit roots" is false because the university did not return to the legal structure it had in 2004. (Opposition, p. 9.) For that to be a material misrepresentation, prospective students would have to know what GCU's 2004 structure was and base their enrollment decision on their impression that GCU reverted to that same structure. There is no plausible basis for the FTC to make such a leap, especially when the FTC fails to explain why reasonable prospective students would know or care about the complexities of GCU's legal structure nearly two decades ago. The FTC's

presumption of materiality is, therefore, unsupported and without reason. And no Ninth Circuit decision requires that materiality be presumed based on unreasonable conclusions. To the contrary, federal courts have found that the FTC is only "entitled to apply, *within reason*, a presumption of materiality." *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (emphasis added) (citing *FTC v. Colgate-Palmolive Co. et al.*, 380 U.S. 374, 392 (1965) ([W]hen the Commission finds deception it is also authorized, within the bounds of reason, to infer that the deception will constitute a material factor in a purchaser's decision to buy.").) It is unreasonable to presume materiality based on the FTC's (false) interpretation of the statements about GCU's nonprofit status.

### III. THE FTC FAILS TO ALLEGE A VIOLATION OF THE FTC ACT OR TSR REGARDING REPRESENTATIONS ABOUT GCU'S DOCTORAL PROGRAMS.

GCE established in its Motion that GCE did not misrepresent the time it takes to complete a GCU doctoral program, and it did not misrepresent the tuition costs for a GCU doctoral program. (Motion, pp. 8-11.) Rather than confront the reality that the enrollment agreements clearly inform prospective students that they may be required to take more than 20 courses (*i.e.*, 60 credits) to complete a doctoral degree, the FTC misstates its own Complaint by arguing that "GCU markets doctoral programs as requiring ***only twenty courses (60 credits)***." (Opposition, p. 13) (emphasis added). That allegation, however, is nowhere to be found in the Complaint. To be sure, the only document referenced in the Complaint discloses in bold lettering that "***A minimum* of 60 credits are required for completion of this program of study**." (Complaint, ¶ 52) (bold in original, italics added). The FTC also ignores the disclosure in the Course List stating that individuals must "complete the prescribed courses and produce a dissertation of academic quality research in their chosen field." (Complaint, ¶ 49.) In doing so, the FTC invites the Court to make the error of drawing the implausible inference that doctoral students would not understand that the dissertation process is necessarily dependent upon the individual student's ability and aptitude and the scope of the chosen dissertation.

The cases the FTC relies upon are inapposite as they involve disclosures that are buried in fine print on a moving background (*In the Matter of Intuit Inc., A Corporation.*, 2024 WL 382358, at *7 (Jan. 22, 2024)) and advertisements that promised hypothetical projections that never occurred (*FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000)). Moreover, GCE's disclosures here are not "post-hoc" disclosures like those in *FTC v. FleetCor Techs., Inc.*, 620 F. Supp. 3d 1268 (N.D. Ga. 2022). (Opposition, p. 16.) In *FleetCor Techs.*, "the ads 'reserve[d] the right' to change the discounts after 12 months." *Id*. at 1298. In contrast, the clear and explicit disclosures here were prominent and unambiguous on the face of the same documents that included the alleged misrepresentations. (Motion, pp. 9-10.) These disclosures make clear that the advertisements about the length and cost of the doctoral programs are not misleading.

## IV.  RULE 9(B)'S PLEADING REQUIREMENT APPLIES, AND THE FTC HAS FAILED TO PLEAD COUNTS I, II, AND III WITH SUFFIICENT PARTICULARITY.

District Courts in the Ninth Circuit routinely hold that claims for violation of Section 5(a) of the FTC Act—and by extension the TSR—"sound in fraud" and are, therefore, subject to a heightened pleading standard under Federal Rule of Civil Procedure Rule 9(b). *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) (claims for violation of Section 5(a) of FTC Act "sound in fraud") (granting motion to dismiss for failure to meet 9(b) particularity requirements).[2] Still, the FTC tries to argue otherwise. According to the FTC,

---

[2] *See also Consumer Fin. Prot. Bureau v. Prime Mktg. Holdings, LLC*, No. CV 16-07111-BRO (JEMx), 2016 U.S. Dist. LEXIS 194873, at *6 (C.D. Cal. Nov. 15, 2016) (finding that the heightened pleading standard of Rule 9(b) applied to TSR claims because they sounded in fraud); *FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 U.S. Dist. LEXIS 126110, at *4 (D. Ariz. 2013) (applying 9(b) to FTC claims alleging telemarketers made "representations" that are "false"); *FTC v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN, 2012 U.S. Dist. LEXIS 183160, at *2 (D. Nev. Nov. 1, 2012), *report and recommendation adopted sub nom. FTC v. AMG Servs.*, No. 2:12-CV-00536-GMN, 2012 U.S. Dist. LEXIS 183159 (D. Nev. Dec. 28, 2012) (applying Rule 9(b) pleading standard to claims for violation of Section 5 of the FTC Act); *FTC v. QYK Brands LLC*, No. SACV 20-1431 PSG (KESx), 2021 U.S. Dist. LEXIS 229942, at *6 (C.D. Cal. 2021) (same); *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-

Rule 9(b)'s heightened pleading requirement does not apply to claims brought under the FTC Act, so the Court should overlook its improper lumping of Defendants in the Complaint. In support of this statement, the FTC relies on three opinions from outside the Ninth Circuit. (Opposition, pp. 18-19.) That authority is not binding on this Court. And while the Ninth Circuit has not yet ruled definitively on the application of Rule 9(b) to claims brought under the FTC Act, the weight of authority in the Ninth Circuit undeniably supports applying Rule 9(b) heightened pleading requirements here.[3] Accordingly, the FTC must allege with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba—Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (internal quotation marks omitted); *see also Lights of Am.*, 760 F. Supp. 2d at 854 (finding the FTC fails to allege the "who, what, when, where, and how" of the fraud because "the allegations do not differentiate between conduct committed by [the three defendants], nor do they explain when or where the alleged misrepresentations were made"). It has fallen far short of this standard.

The FTC does not credibly dispute that it fails to allege specific representations as to specific Defendants but instead attempts to recast its improper group pleading as "categorizing" of defendants based on their function in the alleged scheme. (Opposition, p. 21) (citing *ELH Consulting*, 2013 U.S. Dist. LEXIS 126110, at *5). But the only "category" the FTC alleges in its Complaint is the category of all "Defendants," generally. *See, e.g.*, Compl. ¶¶ 9, 21-22, 24, 29, 40-45, 47, 49-55, 59, 62-65, 68, 70, 71, 86-88, 90-92.[4] This does

---

283 JCM (GWF), 2011 U.S. Dist. LEXIS 57035, at *12 (D. Nev. May 25, 2011) (same).

[3] The FTC cites two cases in support of its contention that district courts in the Ninth Circuit "have found it unnecessary to decide" whether Rule 9(b) applies to FTC actions where the complaint provides ample specificity. (Opposition, p. 19.) To be sure, both cases the FTC cites in its Opposition *did* apply Rule 9(b) to claims brought under the FTC Act, and one of those cases expressly stated that it found "persuasive" the reasoning articulated in *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010) for applying Rule 9(b) to Section 5(a) claims and ultimately held that "[b]ecause the FTC's allegations sound in fraud, the court applies the heightened pleading standard of Rule 9(b) in evaluating the motion for judgment on the pleadings." *FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 U.S. Dist. LEXIS 126110, at *4 (D. Ariz. Sep. 4, 2013).

[4] The FTC also asks the Court to excuse its failure to identify specific representations made

not provide GCE with the requisite notice of the specific allegations made against it, much less satisfy Rule 9(b)'s particularity requirements. The Court should not absolve the FTC of its blatant pleading deficiencies based on the FTC's argument that, apparently, Defendants must be "well aware of the conduct described in the complaint" because they "have litigated other suits related to this misconduct." (Opposition, p. 19.) Whatever other, unrelated litigation the FTC may be invoking in its Opposition is irrelevant to GCE's Motion and to the ultimate question of whether the FTC has met its burden to plead Counts I, II, and III with particularity as required under the law. It has not.

## V.  CONCLUSION

For these reasons, GCE requests that the Court grant its Partial Motion to Dismiss and dismiss Counts I, II, and III from the Complaint.

Date: March 7, 2024

Derin B. Dickerson
Kathleen Benway
Caroline Rawls Strumph
Shanique C. Campbell
Lisa L. Garcia
**ALSTON & BIRD LLP**

*/s/ Derin B. Dickerson*

Attorneys for Grand Canyon Education, Inc.

---

by GCE because GCE can be held responsible for GCU documents since agents may be liable for misrepresentations of the principal, regardless of whether their misconduct is directed by the principal. (Opposition, p. 21.) This argument must be disregarded as the Complaint does not allege that GCE is an agent of GCU. Moreover, it misses the point as it does not clarify whether the statements at issue were made or disseminated by GCE.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March 2024, I caused to be electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all registered CM/ECF users.

*/s/ Derin B. Dickerson*