**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>    Plaintiff,<br><br>v.<br><br>Grand Canyon Education Incorporated, et al.,<br><br>    Defendants. | No. CV-23-02711-PHX-DWL<br><br>**ORDER** |

Pending before the Court is the parties' joint notice of discovery dispute. (Doc. 97.) The Court concludes that oral argument is unnecessary and rules as follows.

1.     The first disputed issue is whether Defendant Brian Mueller ("Mueller") should be required to produce documents associated with co-Defendants Grand Canyon University ("GCU") and/or Grand Canyon Education, Inc. ("GCE"). The FTC argues that Mueller should be required to produce those documents because, by virtue of his roles as GCU's president and GCE's CEO, they are in his possession, custody, or control. (Doc. 97 at 1-2.) Mueller identifies three reasons why he should not be required to produce some or all of the documents at issue: (1) he should not be required to produce any GCU documents because "the FTC's claims against Mr. Mueller are limited to his role as CEO as GCE"; (2) he should not, at any rate, be required to produce any GCU or GCE documents because he is being sued in this action in an individual capacity; and (3) the requests for production ("RFPs") served on him are duplicative of the RFPs served on GCE and are thus disproportionate to the needs of the case. (*Id.* at 5-6.)

The Court disagrees with Mueller's first two proffered reasons for resisting production. Under Rule 34(a)(1), "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . items in the responding party's possession, custody, or control." It is thus unnecessary to resolve Mueller's contention that he is only being in this action sued for his work as CEO of GCE—even assuming this is true, he still may be compelled to produce GCU-related documents that are in his possession, custody, or control (assuming those documents are otherwise within the scope of permissible discovery under Rule 26). In a related vein, although Mueller emphasizes that he is being sued in this action in an individual capacity, this has no bearing on whether the documents at issue are within his custody, possession, or control within the meaning of Rule 34: "A party has possession, custody, or control over documents or things if the party has a legal right to obtain the items on demand. A legal right to the items may arise if the party . . . has a fiduciary or other legally enforceable arrangement through which it could obtain the documents. . . . [N]either ownership nor physical custody is required. The question is whether the party has a right to obtain the documents on demand, regardless of who the technical owner or the current custodian is." 1 Gensler, Federal Rules of Civil Procedure, Rules and Evidence, Rule 34, at 1092-93 (2022). *See also Gen. Env't Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N.D. Ohio 1991) ("An individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director, or shareholder"); *Weaver v. Gross*, 107 F.R.D. 715, 717 (D.D.C. 1985) ("[A] party has a duty to seek that information reasonably available to him from his employees, agents, or others subject to his control as corporate President."). Here, Mueller does not deny that he has the legal right to obtain, on demand, the documents at issue, and any such denial would be surprising given his roles as president and CEO of the entities at issue. *See, e.g., PlayUp, Inc. v. Mintas*, 2024 WL 3621449, *4 (D. Nev. 2024) ("Ample case law has found that a high-level corporate officer has control over corporate documents."); A.*F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 48-49 (S.D.N.Y. 1990) ("Even if Steel Fabricators and Metal Industries are third parties with respect to these

proceedings, Karayannides controls both entities, and therefore he controls the production of their documents."). Thus, Mueller's categorical refusal to produce any GCU or GCE documents lacks merit.

This leaves Mueller's proportionality argument. On the one hand, the general rule is that "a party cannot refuse to produce documents in its possession, custody, or control on the grounds that the materials are available from another source." Gensler, *supra*, at 1083. On the other hand, "in appropriate circumstances and upon a specific showing, the court does have the discretion to order a party to seek documents from a different source or to preclude discovery as duplicative." *Id.* at 1084. Given Mueller's assertion that the RFPs served on him "are duplicative of production requests served on Defendant GCE" and that "GCE and the FTC have been engaged in meet-and-confer sessions about those requests," the Court agrees with Mueller that the most reasonable path forward, at least for now, is to order the parties "to engage in three-way discussions among the FTC, GCE, and Mr. Mueller to ensure that relevant and responsive discovery is not unnecessarily duplicated." (Doc. 97 at 6.) If the parties remain at an impasse over Mueller's discovery obligations following those renewed discussions, they may seek further judicial intervention, but the Court is hopeful that renewed (and expanded) meet-and-confer efforts will do the trick.

2. Another disputed issue is whether there should be a temporal limitation on the documents sought by the FTC. Mueller argues that because "the relevant time period for the FTC's claims is 2018 and after," the FTC should not be allowed to seek "irrelevant and disproportionate discovery from 2012 to the present." (Doc. 97 at 7.) The FTC disagrees, arguing that it is entitled to pre-2018 documents because, among other things, Mueller first "announced the plan to explore converting the University's for-profit operation in 2014"; "GCE's concern with stigma predates the October 2014 announcement"; and "[d]ocuments concerning marketing consequences, and compensation prior to July 2018, are relevant to the FTC's claim and Defendant[] Mueller's denials." (*Id.* at 3-4 & n.1.)

|   |   |
|---|---|
| 1 | The FTC has the better of this argument. "Relevancy in civil litigation is a relatively low bar." *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable." *See also* Gensler, *supra*, Rule 26, at 801-02 ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . . [C]ourts are quick to point out that discovery is concerned with relevant information—not relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance."). Here, the FTC alleges in its operative complaint that Defendants' characterization of GCU as "a non-profit institution" was "false or misleading." (Doc. 62 ¶¶ 69-70.) In support, the FTC alleges that "GCU's operations since July 1, 2018, are not comparable to Grand Canyon University's operation as a nonprofit prior to 2004, as GCU is largely operated by, and most of its revenue is paid to, GCE—the for-profit corporation that owned and operated the University from 2004 until July 1, 2018." (*Id.* ¶ 21.) Given this backdrop, there is no basis for imposing a hard-and-fast 2018 temporal cutoff on the documents sought by the FTC—earlier documents may also reasonably lead to information that bears on any material fact or issue in the action. Such documents are also proportional to the needs of this high-stakes case. |

3.     Mueller also raises a relevance objection to the FTC's request for documents relating to GCU's and GCE's telemarketing activities. Mueller argues he should not be required to produce those documents because they pertain to "irrelevant telemarketing regulations not at issue here," such as "state licensure or registration requirements to secure

- 4 -

bonds, which have no relevance to either the FTC's do-not-call claims or its 'unfair and deceptive acts' clams." (Doc. 97 at 6-7.) The FTC disagrees, arguing the requested documents are relevant for two reasons: *first*, because "the requirements Defendant Mueller would exclude involve prohibitions on deception and compliance with do-not-call requests that overlap with the violations alleged in the complaint"; and *second*, because "records that reflect Defendant Mueller's control, participation, or knowledge of GCU and GCE's telemarketing activities are relevant to his personal liability under the FTC Act." (*Id.* at 4.)

Although the relevance analysis here presents a closer call than the relevance analysis concerning the temporal cutoff, the Court agrees with the FTC that the requested documents fall inside the wide bounds of permissible discovery under Rule 26. As discussed in the order addressing Defendants' earlier motions to dismiss, Mueller's personal liability in this case may turn on his authority over, participation in, and/or subjective awareness of the conduct at issue. (Doc. 56 at 47-50.) The requested documents have the potential to shed light on those issues, even if the regulations at issue do not overlap with alleged telemarketing violations in the operative complaint.

4. Mueller's final objection concerns the FTC's request for documents related to the Higher Learning Commission ("HLC") and the Internal Revenue Service ("IRS"). According to Mueller, the HLC documents are irrelevant because "the FTC itself described [that information] as 'irrelevant' in prior briefing" and the IRS documents "are publicly available." (Doc. 97 at 7.) The FTC contends that because Mueller previously "identified determinations by the HLC and IRS as central to his contention that marketing GCU as a nonprofit is not deceptive," "Mueller's own reliance on these entities makes the information he shared (or withheld) about the benefits he receives relevant." (*Id.* at 4.)

On the one hand, Mueller's relevance-based objection to the HLC and IRS documents is unavailing. Mueller previously identified those documents as relevant to his defense and Rule 26(b)(1) authorizes the FTC "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Even assuming the

FTC ultimately prevails on its position that the HLC and IRS determinations should be deemed "beside the point" (Doc. 44 at 6), Rule 26(b)(1) makes clear that "[i]nformation . . . need not be admissible in evidence to be discoverable." The bottom line is that the HLC and IRS documents fall inside the wide bounds of permissible discovery under Rule 26.

On the other hand, to the extent the IRS documents sought by the FTC are publicly available, the Court agrees with Mueller that he need not directly produce those documents. Instead, he may simply identify where, in the public record, the FTC can find them.

Dated this 22nd day of November, 2024.

Dominic W. Lanza
United States District Judge