MICHAEL E. TANKERSLEY (DC Bar # 411978)
mtankersley@ftc.gov
GREGORY A. ASHE (VA Bar # 39131)
gashe@ftc.gov
PATRICK ROY (DC Bar # 1023521)
proy@ftc.gov
CARLTON B. MOSLEY (DC Bar # 1644552)
cmosley@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop CC-6316
Washington, DC 20580
Telephone: (202) 326-2991 (Tankersley)
          (202) 326-3719 (Ashe)
          (202) 326-3477 (Roy)
          (202) 326-2163 (Mosley)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, <br><br> Plaintiff, <br><br> v. <br><br> Grand Canyon Education, Inc., *et al.*, <br><br> Defendants. | No. CV-23-02711-PHX-DWL <br><br> **JOINT WRITTEN SUMMARY OF DISCOVERY DISPUTE** |

Pursuant to the Court's Scheduling Order (ECF 70), and Local Rule of Civil Procedure 7.2(j), Plaintiff Federal Trade Commission ("FTC") and Defendant Grand Canyon Education, Inc. ("GCE"), submit the following summary of discovery dispute relating to Defendant's production of documents.

**The FTC's Position:**

Requests 1 and 2 seek documents regarding plans for the transfer of Grand Canyon University to a nonprofit and the marketing consequences of characterizing the University as a nonprofit. (ECF 97-3 at 7).  Defendant GCE has limited its search for documents responsive to these requests to materials after January 1, 2017.[1]

Defendant GCE's 2017 cut-off excludes relevant material.  The FTC alleges that Defendants GCE and Mueller formed Gazelle University in 2014 for the purpose of advancing GCE's profits and the interest of its shareholders, including Defendant Mueller. (Amended Compl., ECF 62 ¶ 7, 11-14; Order, ECF 56 at 2-4, 28, 32).  From the time it began operating Grand Canyon University, GCE acknowledged to investors that the reputation of for-profit educational institutions was a liability.[2]  In October 2014, GCE formally notified stockholders that it had launched an effort to "explore enhancing stockholder value" by shedding the for-profit label. (Exhibit A, *Item 8.01. Other Events and Exhibit 99.1*).  GCE announced this initiative – dubbed "Project Gazelle" – before Defendant Mueller incorporated "Gazelle University" (Exhibit B at 1) – the entity that would be renamed as Grand Canyon University in 2018.  The senior leadership of Defendant GCE attended the initial meeting launching Gazelle University in January 2015, the General Counsel of GCE acted as the recording secretary for the meeting, and his minutes recite that GCE planning for the acquisition of the University by a nominally

---

[1] Defendant Mueller similarly objected to producing materials prior to July 1, 2018. (ECF 99 at 3-4).

[2] GCE Annual Report for 2011 at 52, at *https://investors.gce.com/static-files/796e9a44-7334-4ce7-947f-45f1587ac5c8* (noting adverse media coverage regarding for-profit education companies could damage reputation, lower enrollments, and depress stock price).  In July 2012, a Senate Committee released a report that was critical of for-profit universities and included Grand Canyon University among the for-profit universities profiled by the committee. *See* U.S. Senate Health, Education, Labor and Pensions Committee, *For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success* (July 31, 2012), *https://www.help.senate.gov/imo/media/for_profit_report/Contents.pdf.*

1  nonprofit entity had been underway "over the past several months." *Id.* ¶ at 5-6.
2  Defendant GCE's records regarding the goals, expectations and planning for this
3  initiative are squarely within the scope of discovery.

4      Defendant GCE's objections to producing records prior to 2017 do not withstand
5  scrutiny.  This dispute is not "premature" as GCE is currently excluding from its
6  collection of documents materials from the years when it evaluated whether it would be
7  worthwhile to re-brand the University, and advocated for approval to do so.[3]  Records
8  evaluating the impact of a nonprofit label on recruiting and revenue are relevant to the
9  parties' dispute regarding whether Defendants' representations are material to
10 consumers. (ECF 56 at 27-28, 32-33).  Records regarding plans that were rejected are
11 relevant to the allegations that Defendants acted to advance Defendant GCE's business
12 and Defendant Mueller's interests. (ECF 62 ¶ 14).  Defendant GCE provides no concrete
13 evidence to show burden or obstacles to access.  To the contrary, GCE is excluding
14 material based on date – not based on undue burden or accessibility.

15     Defendant GCE's argument that the discovery at issue is not proportional to the
16 needs of the case is also belied by Defendants' ongoing pursuit of approval of their
17 nonprofit claim for more than a decade.  The Ninth Circuit's decision in *Grand Canyon*
18 *University v. Cardona,* 121 F.4th 717 (2024), underscores that this issue is a live dispute,
19 of great importance to Defendants.  The Ninth Circuit's remand also recognizes that
20 there are multiple grounds for questioning the Defendants' characterization of the
21 University as a nonprofit. *See id.* at 726-727.  The pre-2017 materials are significant to
22 Defendants' claims that this Court should conclude that marketing the University as
23 nonprofit is either accurate or immaterial.

---

[3] The "protracted process" that Defendants pursued between 2014 and 2018 is summarized in *Grand Canyon University v. Cardona*, No. CV-21-00177-PHX-SRB, 2022 WL 18456049, at *1 – 3 (D. Ariz. Dec. 1, 2022), *remanded,* 171 F.4th 717 (9th Cir. 2024).

**GCE's Position:**[4] While GCE maintains that Requests 1 and 2 seek materials lacking any relevance to the FTC's claims, it has nevertheless agreed to review at least tens of thousands documents dated on or after January 1, 2017, and to produce non-privileged materials it identifies as responsive to the Requests.[5] Unwilling to compromise as to a reasonable relevant time period, however, the FTC insists that GCE review and produce a broad swath of documents dating as far back as *2014*.[6] The FTC's request should be denied.

<u>**Request 1 seeks documents that are not relevant to the FTC's claims.**</u> Request 1 seeks the broad production of documents – including internal emails and communications with the company's advisers, accreditors, and regulators – dated 2014 to the present, relating not only to the transaction that closed in July 2018, but also to any "plans or proposals" for potential transactions that never occurred.[7] The requested documents are not relevant to the FTC's claim that the university was marketed as a nonprofit in a deceptive manner starting in July 2018 (the "Nonprofit Claim").

*First*, while the FTC suggests that it requires discovery into GCE's intent or motivations in consummating the transaction (and that, inexplicably, it must obtain such discovery from 2014 onward), the FTC has not shown how such discovery is relevant to its allegations that (a) GCU is not a nonprofit or (b) the marketing of GCU as a nonprofit for a brief period of time following the July 2018 transaction was deceptive. Either it was a nonprofit or it was not after July 2018; volumes of documents regarding *planning* for the transaction will not help resolve that question.

---

[4] The Parties' negotiations regarding Requests 1 and 2 remain ongoing in a number of respects. The FTC's request to file a Joint Statement is, therefore, premature.

[5] GCE's agreement in this respect pre-dates GCE's current agreements as to the relevant time periods applicable to the FTC's other discovery requests by at least one year.

[6] While neither the FTC's present statement nor its requests for production propose a relevant time period, the FTC has demanded during the parties' meet and confer process that GCE collect and review documents dating back to "at least" 2014.

[7] *See* Plaintiffs' Revised First Set of Requests for Production of Documents to Defendant Grand Canyon Education, Inc. (attached hereto as Ex. C), at p. 6.

*Second*, documents concerning potential transactions that did not occur are similarly not relevant to whether GCU was a nonprofit following the 2018 transaction. Yet, in demanding discovery from 2014 on, those are precisely the documents the FTC seeks.

*Third,* as detailed below, GCE has agreed to produce various submissions to and decisions from the enumerated agencies, as well as the parties' formal transaction documents. But in seeking both internal communications and "all records of Communications" with these agencies regarding "plans or proposals" for the sale of GCU from 2014 onward, the FTC appears to be attempting to reevaluate and potentially supplant other federal agencies' determinations. Nothing in the Complaint, however, supports this ploy, and the FTC's broad request for such documents should be denied accordingly.

*Finally*, to the extent the FTC's allegations rely upon the Department of Education's ("DOE") determination not to permit GCU to participate in Title IV as a nonprofit, the Ninth Circuit recently overturned that decision because the agency applied the incorrect legal standard. *Grand Canyon Univ. v. Cardona*, 2024 U.S. App. LEXIS 28414. Defendants are assessing the impact of the Ninth Circuit decision on the FTC's claims, and GCE reserves the right to seek a stay of all nonprofit-related discovery (including Requests 1 and 2) and/or to object to the relevancy of such discovery in light of the same.

**Request 2 seeks documents that are not relevant to the FTC's claims.** Request 2 seeks "[a]ll records containing, discussing, or evaluating marketing plans in which [GCU] would be advertised, or is described, as a nonprofit, and any projections, analyses, or evaluations of the impact of such advertising or descriptions on recruiting, enrollment, revenue, or costs." GCE again offered to review potentially responsive documents, subject to a reasonable search, dated on or after January 1, 2017. But once again, the FTC insists upon the review and production of documents dated 2014 onward, despite conceding (as they must) that GCU was not marketed as a nonprofit until after the transaction closed in July 2018. Again, the FTC cannot demonstrate the relevancy of potential

marketing plans or analysis of revenue impact for potential transactions that did not occur. The request for documents starting in 2014 should, therefore, be denied. Moreover, per the FTC's own initial disclosures, the FTC does not claim damages with respect to the Nonprofit Claims. Ex. D at 6-8. Thus, documents concerning the potential revenue impact of marketing GCU as a nonprofit are not relevant to any proffered theory of damages.

**The FTC's proposed time period applicable to Requests 1 and 2 is not proportional to the needs of this case.** The FTC's demand that GCE produce documents dated 2014 onward is unduly burdensome and not proportional to the needs of this case, particularly given the FTC's tenuous relevancy arguments on a claim that barely survived GCE's motion to dismiss.

In response to Requests 1 and 2, GCE has already agreed to review at least tens of thousands of documents produced in recent shareholder litigation concerning the 2018 transaction, the DOE's nonprofit determination, and the company's public disclosures regarding the same, starting on January 1, 2017, *i.e.,* a full ***eighteen months*** before the transaction closed and the university was marketed as a nonprofit. GCE additionally agreed to produce, among other things: (1) Gazelle's application to the IRS for 501(c)(3) status and (2) formal submissions made to the DOE in connection with GCU's request to be treated as a nonprofit under Title IV. GCE also previously produced certain marketing materials in connection with the FTC's investigation and has agreed to discuss reasonable supplemental collections of potentially responsive documents, with a start date of 2017.

GCE is not required to collect and review an additional three years' worth of emails and other documents, if they are even accessible at this time. The FTC's request would likely result in tens or hundreds of thousands of additional documents for GCE's review. In short, granting the FTC's requests for eleven years' worth of discovery would impose a significant (and entirely unnecessary) burden on GCE. GCE's approach is reasonable and balances the aims of relevance and proportionality.

**Local Rule of Civil Procedure 7.2(j) Certification**

The undersigned jointly certify that they have attempted to resolve this matter through written correspondence, telephone consultation, and sincere efforts as required by Local Rule of Civil Procedure 7.2(j), and have reached an impasse.

Respectfully submitted,                                    DATED: December 20, 2024

ATTORNEYS FOR PLAINTIFF                    ATTORNEYS FOR DEFENDANT
FEDERAL TRADE COMMISSION              GRAND CANYON EDUCATION, INC.

/s/
Michael E. Tankersley
Gregory A. Ashe
Carlton Mosley
Patrick Roy
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
Telephone: (202) 326-2991
Email: mtankersley@ftc.gov

/s/ *Derin B. Dickerson*
Derin B. Dickerson
Caroline R. Strumph
Shanique C. Campbell
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Email: derin.dickerson@alston.com
caroline.strumph@alston.com
shanique.campbell@alston.com

Kathleen Benway
Graham Gardner
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 239-3034
kathleen.benway@alston.com
Graham.Gardner@alston.com

Lisa L. Garcia
ALSTON & BIRD LLP
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
lisa.garcia@alston.com