Joint Written Summary of Discovery Dispute

No. CV-23-002711-PHX-DWL

# Plaintiff's Exhibit E

Derin B. Dickerson (*pro hac vice*)
Andrew J. Liebler (*pro hac vice*)
Shanique C. Campbell (*pro hac vice*)
Taylor Lin (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:   404-881-7000
Facsimile:    404-881-7777
Email: derin.dickerson@alston.com
               andrew.liebler@alston.com
               shanique.campbell@alston.com
               taylor.lin@alston.com

*Attorneys for Defendant Grand Canyon Education, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| TANNER SMITH and QIMIN WANG, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>        v.<br><br>GRAND CANYON EDUCATION, INC.,<br><br>            Defendant. | Case No. 2:24-cv-01410-SPL<br>Assigned to: Hon. Steven P. Logan<br><br>**REPLY IN SUPPORT OF DEFENDANT GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT ................................................................................................ 2

      A.    Plaintiffs Do Not Adequately Allege that GCE Violated RICO ..................... 2

            1.    Plaintiffs Do Not Allege Any Misrepresentations or Omissions. ........... 2

            2.    Plaintiffs' Reliance on the *FTC Case* is Unavailing. .............................. 4

            3.    Plaintiffs Have Not Alleged A RICO Enterprise that GCE
                  Conducted and Participated In. ................................................................. 7

            4.    Plaintiffs Fail to Allege a Reinvestment Scheme. ................................... 9

            5.    Plaintiffs' RICO Claims are Time-Barred Under Federal Law.............. 9

      B.    Plaintiffs' Consumer Protection Claims Fail. ................................................... 11

III.  CONCLUSION ........................................................................................... 11

REPLY ISO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ............................................................................9

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) .........................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................2

*Best W. Int'l Inc. v. Twin City Lodging LLC*,
    2019 U.S. Dist. LEXIS 126487 (D. Ariz. July 29, 2019) .................5

*Chi Pham v. Cap. Holdings, Inc.*,
    2011 U.S. Dist. LEXIS 89047 (S.D. Cal. Aug. 9, 2011)...................9

*Cohen v. Trump*,
    200 F. Supp. 3d 1063 (S.D. Cal. 2016) ............................................7

*D. Penguin Bros. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014)......................................................7

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ...........................................................3

*FTC v. Gill*,
    71 F. Supp. 2d 1030 (C.D. Cal. 1999) .............................................7

*FTC v. Grand Canyon Educ., Inc.*,
    2024 WL 3825087 (D. Ariz. Aug. 15, 2024) ...................................4

*FTC v. Medical Billers Network, Inc.*,
    543 F. Supp. 2d 283 (S.D.N.Y. 2008) ..............................................7

*Gallagher v. Capella Educ. Co.*,
    2021 U.S. App. LEXIS 37613 (9th Cir. Dec. 20, 2021) ..................4

*Isaacs v. USC Keck Sch. of Med.*,
    853 F. App'x 114 (9th Cir. 2021).....................................................10

*Knowles v. Arris Int'l plc*,
    2019 U.S. Dist. LEXIS 142293 (N.D. Cal. Aug. 20, 2019) .............5

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ...................................................................5

*Lindner v. Occidental Coll.*,
   2020 U.S. Dist. LEXIS 235399 (C.D. Cal. Dec. 11, 2020)............................3

*Martinelli v. Petland, Inc.*,
   2009 U.S. Dist. LEXIS 69313 (D. Ariz. Aug. 7, 2009) ..................................3

*Medimpact Healthcare Sys. v. IQVIA Inc.*,
   2020 U.S. Dist. LEXIS 155996 (S.D. Cal. Aug. 27, 2020)............................3

*Millam v. Energizer Brands, LLC*,
   2022 U.S. Dist. LEXIS 239864 (C.D. Cal. Dec. 9, 2022) ........................5, 6

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ........................................................................5

*Nugget Hydroelectric L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) .....................................................................9

*Orshan v. Apple, Inc.*,
   804 F. App'x. 675 (9th Cir. 2020) ..............................................................6

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ..................................................................................8

*River City Markets v. Fleming Foods West, Inc.*,
   960 F.2d 1458 (9th Cir. 1992) ................................................................8, 9

*Soueidan v. St. Louis Univ.*,
   926 F.3d 1029 (8th Cir. 2019) ...................................................................4

*Sponchiado v. Apple Inc.*,
   2019 U.S. Dist. LEXIS 199522 (N.D. Cal. Nov. 18, 2019) ..........................5

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .....................................................................2

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ...................................................................9

*U.S. Fire Ins. Co. v. United Limousine Serv.*,
   303 F. Supp. 2d 432 (2d Cir. 2004) ...........................................................8

*United Food & Com. Workers Unions v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) .....................................................................8

REPLY ISO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS

*United States v. Shields*,
  844 F.3d 819 (9th Cir. 2016) ..........................................................................3

*Williams v. Gerber Foods*,
  552 F.3d 934 (9th Cir. 2008) ..........................................................................6

*Young v. Grand Canyon University*,
  57 F.4th 861 (11th Cir. 2023) .........................................................................6

*Zwicky v. Diamond Resorts, Inc.*,
  2021 U.S. Dist. LEXIS 122449 (D. Ariz. Jun. 30, 2021).................................3

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................2

**STATUTES**

RICO ............................................................................................................passim

REPLY ISO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS

## I.  **INTRODUCTION**

The foundation of Plaintiffs' entire case has been disproven.  Plaintiffs base their First Amended Complaint ("FAC") on the allegation that Grand Canyon Education ("GCE") failed to disclose that doctoral students may require more than 60 or 65 credits to complete their degrees.  In its Motion to Dismiss ("Motion"), GCE proved that this allegation is untrue and that each Plaintiff signed a form acknowledging that the opportunity to "finish within the listed 60 credits" is not guaranteed and that "many learners will need additional time and continuation courses to complete an approved dissertation."  Because GCE provided Plaintiffs the precise information they contend they did not receive, the FAC must be dismissed.

Rather than concede that they signed a form acknowledging that the length of time required to complete a doctoral degree varies based on the student's unique plan, dissertation, and "the rate at which the work is done by the learner,"—frankly, a fact that is widely understood by doctoral students—Plaintiffs, who had each completed bachelor's and master's degree programs, now argue that they did not understand that it might take more than 60 credits to complete their degrees.  Not only is that implausible, it is absurd.  Notably, despite Plaintiffs' numerous references in the FAC to their enrollment agreements, Plaintiffs conveniently failed to attach the acknowledgement form that was a part of their enrollment agreements.  The Court should not reward Plaintiffs for pretending to lack common knowledge about information that was explicitly provided to them.  Plaintiffs' conduct deserves sanction, not an opportunity to impose substantial costs on GCE through the discovery process.

In their Opposition, Plaintiffs have failed to resurrect their deficient theory.  They rely heavily on a recent order from Judge Lanza, but that order is easily distinguishable as Judge Lanza did not have before him the critical document that included the information Plaintiffs contend was not disclosed.  Plaintiffs' arguments in their Opposition are also unavailing for several additional reasons.  *First*, Plaintiffs' assertions that GCE failed to disclose unspecified policies and practices cannot cure their failure to allege an actionable misrepresentation or omission.  *Second*, despite reframing their allegations, Plaintiffs still fail to plead a legal entity enterprise that GCE conducted or participated in.  *Third*, Plaintiffs fail to allege a reinvestment

REPLY ISO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS

scheme. *Fourth*, Plaintiffs' RICO claims are time-barred because they knew of the possibility of additional costs for continuation courses at the time of their enrollment. For these reasons, the Court should grant GCE's Motion.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Adequately Allege that GCE Violated RICO

#### 1.   Plaintiffs Do Not Allege Any Misrepresentations or Omissions.

Although Plaintiffs attempt to predicate their RICO claim on wire and mail fraud, they do not adequately allege any misrepresentations or omissions by GCE regarding the costs for a GCU doctoral program. *See* Mot., Dkt. 24-1 at 2-4. Plaintiffs cannot cure this deficiency by simply insisting in their Opposition that "cost estimates distributed by GCE were deceptive" (Opp. Dkt. 26 at 3) even though Plaintiffs' own signed enrollment materials expressly provided the information that Plaintiffs claim GCE failed to disclose (*see* Dkts. 24-2 – 24-11). Rather than confront the reality that the enrollment materials contain conspicuous disclosures, Plaintiffs nitpick the materials for allegedly failing to disclose the policies and practices that allegedly prevent students from completing doctoral degrees in "just 60 credits." Opp., Dkt. 26 at 4, 6. These bald assertions do not cure Plaintiff's failure to plead facts sufficient to show any actionable misrepresentations or omissions by GCE.

*First*, Plaintiffs' argument that the enrollment materials do not disclose policies and practices cannot satisfy the particularity standard of Rule 9(b). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting" the allegedly deceptive omissions underpinning their claims. Fed. R. Civ. P. 9(b). Here, however, Plaintiffs' cursory claim that GCE fails to disclose policies and practices is not "specific enough to give [GCE] notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

*Second*, Plaintiffs failed to (and cannot) allege that GCE has an affirmative duty to disclose some unidentified policies and practices regarding educational programs, as suggested in Plaintiffs' Opposition. When, as here, racketeering activities of mail and wire

fraud are "premised on either non-disclosure or an affirmative misrepresentation," the plaintiff must demonstrate "an independent fiduciary or statutory duty underlying the fraud." *Zwicky v. Diamond Resorts, Inc.*, 2021 U.S. Dist. LEXIS 122449, at \*18-19 (D. Ariz. Jun. 30, 2021) (quoting *Eller v. EquiTrust Life Ins. Co.,* 778 F.3d 1089, 1092 (9th Cir. 2015)). Because Plaintiffs' have not alleged "the existence of an independent duty to disclose," their allegations of fraud by omission cannot stand. *Medimpact Healthcare Sys. v. IQVIA Inc.*, 2020 U.S. Dist. LEXIS 155996, at \*71 (S.D. Cal. Aug. 27, 2020) (citing *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016)); *see Martinelli v. Petland, Inc.*, 2009 U.S. Dist. LEXIS 69313, at \*6 (D. Ariz. Aug. 7, 2009) (dismissing RICO claims based on misrepresentation by omission where plaintiffs failed to assert an "independent duty to disclose" the information).

*Third*, despite Plaintiffs' contestations otherwise, GCE and GCU provide doctoral students substantial information regarding how doctoral programs work. *See, e.g.*, Enrollment Agreements, Dkts. 24-8 – 24-11 (explaining program credits and costs, tuition refund policy, credit transfer, and other information regarding doctoral programs).

*Fourth*, Plaintiffs quibble that "GCE made it practically impossible for doctoral students like Plaintiffs to graduate with just 60 credits." Opp., Dkt. 26 at 4; *see also id.* at 2, 6. Such claims, however, are barred by the educational malpractice doctrine, which prohibits claims attacking the quality of an educational experience. Courts routinely hold that actions alleging an educational institution has failed to provide an adequate education are non-cognizable claims. *See*, *e.g.*, *Lindner v. Occidental Coll.*, 2020 U.S. Dist. LEXIS 235399, at \*16 (C.D. Cal. Dec. 11, 2020) (noting that courts "across the country have repeatedly rejected claims that seek damages for an allegedly 'subpar' education, or 'educational malpractice' claims, whether those claims sound in contract or tort"). Although Plaintiffs do not use the phrase "educational malpractice," they assert that GCE's policies and practices "create artificial bottlenecks" and "prevent doctoral students like Plaintiff Smith from completing their degrees with just 60 credits." Opp., Dkt. 26 at 6; *see also* FAC ¶¶ 108, 128, 151, 171. These assertions raise questions concerning "the quality of education" and "reasonableness of [GCE's] conduct in providing educational services," which are prototypical of improper

educational malpractice claims.[1]  *Gallagher v. Capella Educ. Co.*, 2021 U.S. App. LEXIS 37613, at *2 n.1 (9th Cir. Dec. 20, 2021); *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019). Plaintiffs' claims should be dismissed on this basis alone.

### 2.      Plaintiffs' Reliance on the *FTC Case* is Unavailing.

Plaintiffs' heavy reliance on the *FTC case* to support their misrepresentation claims is misplaced for several reasons.  *See* Opp., Dkt. 26 at 5-7, 13 (discussing *FTC v. Grand Canyon Educ., Inc.*, 2024 WL 3825087, at *19 (D. Ariz. Aug. 15, 2024)).  Unlike the *FTC case*, the record in this case includes additional enrollment materials that Judge Lanza did not have the benefit of considering.  Specifically, the Doctoral Disclaimers Acknowledgment (Dkts. 24-4 – 24-7) was not before the court in the *FTC case*, and therefore, Judge Lanza did not rule on the disclosures contained therein.  Each Plaintiff in this case received and signed a Doctoral Disclaimers Acknowledgment, which conspicuously disclosed that time to completion is "unique" to individual doctoral students and that many doctoral students will need to take and pay for continuation courses.  *See id.*; *see also* Mot., Dkt. 24-1 at 3-4 (discussing the disclosures).  Plaintiffs therefore cannot claim to be deceived when they signed forms providing the very information that they claim GCE failed to disclose.[2]

Moreover, Plaintiffs incorrectly state that the Doctoral Disclaimers Acknowledgment is "the only form GCE proffers for all four Plaintiffs."  Opp., Dkt. 26 at 5.  Although the Doctoral Disclaimers Acknowledgment, by itself, is dispositive of Plaintiffs' claims, GCE also submitted as exhibits the Enrollment Agreements signed by each Plaintiff.  *See* Dkts. 24-8 – 24-11.  The Enrollment Agreements are contracts signed by doctoral students, including Plaintiffs, that contain a conspicuous disclosure regarding the number of credits required for completion of a GCU doctoral degree.  *See id*.  In addition, GCE submitted to this Court the complete tuition estimates for Plaintiffs Smith and Wang because they expressly referenced

---

[1] This is precisely the type of claim that cannot be certified for class treatment because it would involve significant factual questions regarding each individual's experience.

[2] Furthermore, Judge Lanza found in the *FTC case* that the alleged marketing materials could "be viewed, at least in isolation," as deceptive when "all inferences are resolved in the FTC's favor."  2024 WL 3825087, at *18-19.  This Court need not view the statements "in isolation" because the record contains the full disclosures provided to Plaintiffs.

these estimates in the FAC but proffered only excerpts that inaccurately represent the information provided.[3] *Compare* FAC ¶¶ 98, 121 *and* Dkts. 24-2, 24-3.  The complete tuition estimates clearly reflected that they were "estimates only" and contained clear  disclosures, in red font, regarding continuation courses:

> Since program inception, on average, doctoral students who graduated required 5.2 continuation courses to complete their doctoral degree. Continuation Courses*: $1,925 per course (1st 5 courses); $500 per course (6th course and beyond)

Excerpt from Doctoral Program Calculators, Dkts. 24-2, 24-3.

Altogether, the enrollment materials at issue contain conspicuous disclosures warranting dismissal of Plaintiffs' misrepresentation or omission-based claims.  Plaintiffs contend that the effect of these disclosures is "typically . . . 'a question of fact'."  Opp. Dkt. 26 at 5 (citation omitted).  Plaintiffs miss the mark here.  Courts hold that it is typically a question of fact whether *disclaimers* cure an otherwise deceptive representation.  Here, the enrollment materials do not contain mere "disclaimers" that purport to cure an affirmative misrepresentation.  Instead, they are affirmative disclosures of the information that Plaintiffs claim GCE failed to disclose.  Moreover, dismissal on the pleadings is appropriate when, as here, "qualifying language [] make[s] the meaning of a representation clear."  *Sponchiado v. Apple Inc.*, 2019 U.S. Dist. LEXIS 199522, at *9-10 (N.D. Cal. Nov. 18, 2019) (collecting cases); *see Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021) (affirming dismissal on the pleadings when plaintiffs based false advertising claims on "unreasonable interpretations").  For instance, in *Millam v. Energizer Brands, LLC*, the district court dismissed false advertising claims partly because the allegedly misleading statements contained qualifying phrases, such as "'***up to*** 50% long lasting,' which a reasonable consumer would not understand to mean . . . always or consistently 50% longer lasting."  2022 U.S. Dist. LEXIS 239864, at *9 (C.D. Cal. Dec. 9, 2022) (emphasis added) (citations omitted). *Cf. Knowles v. Arris Int'l plc*, 2019 U.S. Dist. LEXIS 142293, at *37 (N.D. Cal. Aug. 20, 2019)

---

[3] In this way, GCE avoids converting its Motion into a motion for summary judgment.  *See* Mot., Dkt. 24-1 at 3 n.2 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Best W. Int'l Inc. v. Twin City Lodging LLC*, No. CV-18-03374-PHX-SPL, 2019 U.S. Dist. LEXIS 126487, at *6 (D. Ariz. July 29, 2019)).

(granting defendant summary judgment for claims predicated on statements containing the qualifying phrase "up to"), *aff'd*, 847 F. App'x 512 (9th Cir. 2021).  Like *Millam*, qualifying language exists in the enrollment materials that support a grant of dismissal.  The Enrollment Agreements, for example, plainly state that "**[a] *minimum* of 60 credits**" is required.  Dkts. 24-8 – 24-11 (emphasis added).  "Minimum," like the phrase "up to," indicates that doctoral degrees ***can*** be earned in as little as 60 credits—not that they are always or consistently earned in "just 60 credits," as Plaintiffs propose.  Opp., Dkt. 26 at 2, 4, 6, 16.  A reasonable consumer—sophisticated graduate students pursuing a doctorate—would not understand "minimum" to mean "maximum" as the Eleventh Circuit recognized in *Young v. Grand Canyon University*, 57 F.4th 861, 871 (11th Cir. 2023).  In *Young*, the Eleventh Circuit observed that the enrollment agreement's reference to "a minimum of 60 credit hours . . . merely reflects a potential path to completion if a doctoral candidate puts forth maximum effort and succeeds at each relevant stage."  *Id*.  There is no other reasonable interpretation.

The Doctoral Disclaimers Acknowledgment further clarifies that students have "an ***opportunity, not a promise***" "to finish within the listed 60 credits."  Dkts. 24-4 – 24-7 (emphasis added).  Plaintiffs cannot be allowed to ignore the plain meaning of these statements and qualifiers to advance an unreasonable interpretation of the disclosures they received.

The cases Plaintiffs cite do not warrant a different result because, unlike here, those cases involved affirmative misrepresentations and the disclaimers or disclosures were in small print or virtually hidden.  In *Williams v. Gerber Foods*, for example, the product packaging contained misleading statements on the front of the box, and consumers could only "discover the truth from the ingredient list in small print on the side of the box." 552 F.3d 934, 938-39 (9th Cir. 2008).  In *Orshan v. Apple, Inc.*, the defendant's disclaimer was in small print, and the target audience was so wide that it was "not possible to determine without factual development" the expectations of reasonable consumers.  804 F. App'x. 675, 675-76 (9th Cir. 2020).  By contrast, the disclosures in this case are in regular-sized, red, or **bold** text within the very enrollment materials that Plaintiffs received and/or signed just below the information they claim they did not receive.  *See* Dkts. 24-2 – 24-11.  Moreover, the target audience is

narrow—college graduates who have sought out the university to pursue a doctoral degree. In this context, the Court can permissibly determine at this stage that a reasonable prospective doctoral student would understand that he may be required to take continuation courses to complete his dissertation.[4]

### 3. Plaintiffs Have Not Alleged A RICO Enterprise that GCE Conducted and Participated In.

Plaintiffs failed to allege, in plain English, what constitutes the RICO enterprise at the center of their FAC. Now, in response to GCE's Motion, Plaintiffs attempt to reform their allegations by insisting that Grand Canyon University ("GCU") is the RICO enterprise. Plaintiffs, however, cannot use a response to a motion to dismiss to rewrite their deficient FAC. Plaintiffs point to general and conclusory assertions in the FAC in an attempt to show the existence of a legal entity enterprise. *See* Opp., Dkt. 26 at 7-9 (citing FAC ¶¶ 24, 66-89, 190-92). The FAC paragraphs that Plaintiffs cite, however, contain only threadbare allegations regarding GCU's conversion from a for-profit to a non-profit entity. There was nothing unlawful or improper about the GCU conversion, and Plaintiffs do not sufficiently allege that this conversion created the alleged RICO enterprise.

Even their reframed allegations—which the Court should not consider—fail as a matter of law. "[A] complaint does not state a RICO claim merely by alleging racketeering activity and denominating a legal entity a 'RICO enterprise.' A RICO violation requires a specific relationship between the enterprise and the pattern of racketeering." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014). Here, as noted in GCE's Motion, Plaintiffs failed to adequately plead a single act of fraud, let alone a pattern of racketeering activity with a nexus to the alleged enterprise.

---

[4] Plaintiffs also cite *Cohen v. Trump*, 200 F. Supp. 3d 1063 (S.D. Cal. 2016) to support their assertion that the effectiveness of disclaimer is a question of fact inappropriate for a motion to dismiss. *See* Opp., Dkt. 26 at 5. That case did not involve any disclaimer or qualifying language, let alone the conspicuous disclosures in the enrollment agreements at issue here. The *FTC v. Gill* and *FTC v. Medical Billers Network, Inc.* cases are also inapposite because they do not support Plaintiffs' argument that this Court should refrain from finding that disclosures in a signed contract can defeat misrepresentation claims at the pleadings stage. 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999); 543 F. Supp. 2d 283, 304-07 (S.D.N.Y. 2008).

Even if the FAC could be construed to allege an enterprise, it does not sufficiently allege that GCE conducted or participated in the enterprise's affairs.  Plaintiffs argue that this RICO element is satisfied because "GCE's interests and [the so-called] GCU Enterprise's interests are closely aligned."  Opp., Dkt. 26 at 9 (citations omitted).  Plaintiffs, however, do not adequately allege conduct or participation in an enterprise simply because an enterprise's interests and GCE's legitimate business interests are congruent.  *Cf. United Food & Com. Workers Unions v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (rejecting plaintiff's argument that defendants participated in a RICO enterprise because they could not have accomplished their fraudulent goals without cooperation).  It is also not enough to allege that GCE "perform[s] tasks that are necessary and helpful to the enterprise" or "provide[s] goods and services that ultimately benefit the enterprise."  *U.S. Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 451-52 (2d Cir. 2004) (collecting cases dismissing RICO claims against professional service providers).  Instead, Plaintiffs must allege that GCE conducted and participated in the "*enterprise's* affairs" rather than its own affairs or the regular affairs of a legitimate business.  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  The FAC falls short of this standard, having failed to allege facts that separate GCE's conduct of its legitimate business affairs from the conduct of the so-called enterprise's affairs.

Notably, the Ninth Circuit's decision in *River City Markets v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) compels a finding that Plaintiffs' allegations regarding GCE's legitimate business affairs do not rise to the level of conduct or participation in an enterprise.  Although Plaintiffs claim that *Fleming Foods* only turned on "whether there was any evidence of actions that 'violate any federally protected rights of the plaintiffs,'" that is plainly incorrect.  Opp., Dkt. 26 at 9.  The issue presented in *Fleming Foods* was whether summary judgment was appropriate with respect to RICO claims dismissed by the lower court.  960 F.2d at 1462.  The Ninth Circuit held that the plaintiffs' "papers fail to meet their burden of producing evidence sufficient to establish *all the elements* of the substantive RICO claims," including conduct or participation in a "proscribed RICO enterprise."  *Id.* at 1462, 1464 (emphasis added).  "Wholly wanting" was any evidence of misconduct because the services

agreement between the RICO defendants was a "routine business arrangement."  *Id.*  This decision is instructive here, as Plaintiffs allege that a services agreement exists (*see* FAC ¶ 32) but fail to differentiate GCE's legitimate business from the enterprise's affairs.

### 4.    Plaintiffs Fail to Allege a Reinvestment Scheme.

Plaintiffs fail to assert the basic factual allegations required to state a claim under § 1962(a).  Nowhere do Plaintiffs allege any investment injury separate and distinct from the alleged predicate act, which is insufficient.  *See Chi Pham v. Cap. Holdings, Inc.*, 2011 U.S. Dist. LEXIS 89047, at *11-12 (S.D. Cal. Aug. 9, 2011) (citing *Nugget Hydroelectric L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992)).  At best, Plaintiffs purport to allege an injury suffered "from the predicate act itself," but make no allegations specifically traceable to any injuries from the reinvestment of racketeering proceeds in the FAC.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008).[5]  Plaintiffs again invent new allegations with their Opposition, arguing that GCE "used proceeds of fraud to continue engaging in RICO violations" and "to establish a RICO enterprise" without citing to a single allegation in their FAC to support this conclusory statement.  Opp., Dkt. 26 at 11.  Plaintiffs cannot reframe or alter the allegations in their FAC by way of a response to a motion to dismiss, and the Court should not allow that here.  Moreover, Plaintiffs fail to bolster their claim that GCE used purported "fraud proceeds" to purchase an interest in a RICO enterprise (FAC ¶ 192), with any factual allegations demonstrating ***how*** such use or investment caused them harm.  Plaintiffs' reinvestment claim should be dismissed for this reason alone.

### 5.    Plaintiffs' RICO Claims are Time-Barred Under Federal Law.

Plaintiffs' RICO claims are barred by the four-year statute of limitations because Plaintiffs were aware of their alleged injuries by as late as 2019.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987); *see* Mot., Dkt. 24-1 at 9-10; FAC

---

[5] The allegations *Sybersound Records, Inc.* resemble Plaintiffs' allegations.  In *Sybersound Records, Inc.,* the court dismissed the plaintiff's § 1962(a) claim because the plaintiff failed to allege an injury "separate and distinct" from the injuries incurred from the predicate act of copyright infringement.  517 F.3d at 1149.  Similarly, in *Wagh v. Metris Direct, Inc.,* the court dismissed the plaintiff's § 1962(a) claim because the plaintiff failed to allege any injury derived directly from the investment of racketeering proceeds.  363 F.3d 821, 829 (9th Cir. 2003).

¶¶ 90, 115, 135, 154.  Because Plaintiffs' RICO claim rests solely on allegations of GCE's purported representations made at the time of Plaintiffs' enrollment, it is undeniable that Plaintiffs were aware of their injuries by August 2017 (Palmer), July 2018 (Smith), February 2019 (Wang), and November 2019 (Carter) at the **latest**.  *See* Mot., Dkt. 24-1 at 10.  The fact that Plaintiffs did not start their continuation courses until July 2021 has no bearing on the limitations period because Plaintiffs knew of the possibility of additional costs associated with enrollment in continuation courses at the time of enrollment in their respective programs.

A "plaintiff is deemed to have had constructive knowledge [of the injury] if [he] had enough information to warrant investigation which, if reasonably diligent, would have led to discovery of the fraud." *Isaacs v. USC Keck Sch. of Med.*, 853 F. App'x 114, 115-16 (9th Cir. 2021) (dismissing RICO claim as time-barred because the limitations period was triggered when plaintiff became aware of his medical license revocation and accompanying reputational harm when his appeal was dismissed in 2015, not when plaintiff found a document reflecting his dismissal from medical school for "Non Academic Reasons" in 2019).  "[T]he limitations period is triggered when an individual becomes **aware of or suspects** an injury (not when he finds smoking-gun evidence of his injury)." *Id.* at 116 n.1.  At a minimum, the information provided to Plaintiffs about their doctoral programs at the time of enrollment was sufficient to make Plaintiffs **aware of** or to lead Plaintiffs to **suspect** the potential for enrollment in continuation courses at an added cost.  Certainly, the information provided to Plaintiffs would put a sophisticated, prospective doctoral student on notice about the dissertation requirement, warranting reasonable investigation into the same that would have informed the students of the likelihood of enrollment in continuation courses and their added costs.[6]  Plaintiffs' civil RICO claim is time-barred and should be dismissed.

---

[6] The Enrollment Agreements also referenced the University Policy Handbook which was available to Plaintiffs and contained detailed information about their doctoral programs.  At the very least, Plaintiffs would have had enough information to warrant investigation into their enrollment in continuation courses and the additional costs.

1    **B.    Plaintiffs' Consumer Protection Claims Fail.**

2         Plaintiffs' consumer protection claims under California, West Virginia, and Florida law

3    should be dismissed for the reasons outlined in GCE's Motion.  *See* Mot., Dkt. 24-1 at 10-17.

4    Nothing in Plaintiffs' Opposition warrants a different result.  Although Plaintiffs contend that

5    "GCE wrongly attacks the California law claims" based on lack of any misrepresentation

6    (Opp., Dkt. 26 at 13), Plaintiffs do little more to refute GCE's arguments.   Plaintiffs'

7    Opposition merely glosses over the FAL claim, incorrectly concluding that "as the court in the

8    *FTC case* already found, GCE's claims 'qualify as deceptive representations.'"  *Id.*; *see supra*

9    Section II.A.2(explaining why the *FTC case* is different).

10        Plaintiffs do not even mention their CLRA and UCL fraud prong claims, which federal

11   courts analyze together.  More importantly, Plaintiffs still do not allege that GCE made any

12   representation which is false, actually misleading, or likely to mislead targeted consumers, as

13   required by the reasonable consumer test governing the FAL, CLRA, and UCL fraud prong

14   claims.  *See* Mot., Dkt. 24-1 at 11; *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228

15   (9th Cir. 2019).  Plaintiffs do not even try to explain how reasonable doctoral students would

16   be deceived by the Doctoral Disclaimers Acknowledgement and related documents, each of

17   which plainly discloses that continuation courses for a fee may be required to obtain a doctoral

18   degree.   *See* Dkts. 24-2 – 24-11 (each stating that since "program inception, ***on average***,

19   doctoral students who graduated required 5.2 continuation courses to complete their doctoral

20   degree.").  Nor do Plaintiffs explain how reasonable doctoral students could think that they

21   would not have to pay the cost for any additional courses they may need to take.  *See* Dkts.

22   24-2, 24-3 (showing that continuation courses cost "$1,950 per course (1st 5 courses)" and

23   "$500 per course (6th course and beyond)").  Plaintiffs' FAL, CLRA, and UCL fraud prong

24   claims, therefore, should be dismissed based on their deficient allegations.

25   **III.   CONCLUSION**

26        For the foregoing reasons, GCE requests that the Court grant its Motion to Dismiss

27   Plaintiffs' FAC (Dkt. 24).

28

Respectfully submitted this 15th day of January 2025.

/s/ Derin B. Dickerson
Derin B. Dickerson, GA Bar #220620*
Andrew J. Liebler, GA Bar #529175*
Shanique C. Campbell, GA Bar #346659*
Taylor Lin, GA Bar #273408*
*(pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424

*Attorneys for Defendant Grand Canyon Education, Inc.*

REPLY ISO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of January 2025, I caused to be electronically transmitted the attached document entitled GRAND CANYON EDUCATION, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all registered CM/ECF users.

*/s/ Derin B. Dickerson*
Derin B. Dickerson
