**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>           Plaintiff,<br><br>v.<br><br>Grand Canyon Education Incorporated, et al.,<br><br>           Defendants. | No. CV-23-02711-PHX-DWL<br><br>**ORDER** |

Pending before the Court is the parties' joint notice of discovery dispute. (Doc. 181.) The Court concludes that oral argument is unnecessary and rules as follows.

At issue are two requests for production ("RFPs") that the FTC served on Defendant Brian E. Mueller ("Mueller"). The first is RFP No. 2, which seeks all documents "[c]reated on or after July 1, 2014, recording or containing Communications with the trustees, directors, or officers of Grand Canyon University, managing officers or directors of Grand Canyon Education, Inc., the Compensation Committee of Grand Canyon Education, Inc., advisors to Grand Canyon University or Grand Canyon Education, Inc., the Internal Revenue Service, or The Higher Learning Commission regarding compensation You may receive or have received from Grand Canyon University or Grand Canyon Education, Inc." (Doc. 97-1 at 8-9.) The second is RFP No. 11, which seeks all "[d]ocuments recording communications between the Internal Revenue Service and representatives of Grand Canyon University excluding the annual tax returns for Grand Canyon University and Form 1023 Application for Recognition of Exemption Under Section 501(c)(3) of the

Internal Revenue Code." (Doc. 181-1 at 7.)

Mueller raises several objections to these requests. First, Mueller contends that because the FTC has not identified any consumer who understood Defendants' use of the term "nonprofit" to convey information about how GCU is structured or about his compensation (even though the FTC represented during earlier stages of the case that it would do so), the information sought by the FTC is irrelevant. (Doc. 181 at 5-6.) Mueller also contends that any search for the requested documents would be "expansive" and "a monumental undertaking" and, seemingly on that basis, invokes the concept of "proportionality." (*Id.* at 5 & n.5.) Second, Mueller contends that because the FTC's theory of liability "would rise or fall on (1) how Mr. Mueller is actually compensated (which is not in dispute), and (2) whether students reasonably believed (to their detriment) that his compensation was something different," "[t]he requested communications—none of which are with students—have no bearing on those questions." (*Id.* at 6.) Third, Mueller argues that to the extent the FTC believes the requested documents bear on the issue of private inurement, that issue is a red herring for various reasons, including that the IRS recently concluded that GCU satisfies all relevant nonprofit requirements (including the lack of private inurement). (*id.* at 6-7.) Fourth, Mueller argues that, to the extent the RFPs seek to compel him to produce GCU's tax records, the requests are premature because "[i]t is not currently clear that [he] has possession, custody, or control of those records under Rule 34 because GCU's General Counsel has informed [his] counsel he is prohibited from disclosing GCU's privileged and highly confidential tax records and communications." (*Id.* at 7.)

In response, the FTC notes that after Mueller submitted an initial application to the IRS in 2015 for recognition of GCU as a tax-exempt organization, which included representations concerning how Mueller would be compensated, "GCU subsequently announced that it had engaged in multiple conversations with the IRS and modified its 'deal structure' to satisfy IRS requests." (*Id.* at 2.) The FTC thus contends that the requested documents are relevant because they will show how Mueller's compensation

"shifted" over time. (*Id.* at 2-3.)[1] The FTC also argues that Mueller's efforts to dispute the relevance of the requested documents are undeveloped and conclusory; that the Court rejected similar relevance objections during earlier discovery disputes; and that Mueller has not sufficiently developed any claim of undue burden. (*Id.* at 3.) As for Mueller's "possession, custody, or control" objection, the FTC contends that this objection is both forfeited as to RFP No. 2 (because Mueller did not provide it in his written response) and foreclosed by the Court's November 22, 2024 discovery dispute ruling. (*Id.* at 3-4.) The FTC concludes: "The FTC's complaint alleges that Defendant Mueller's compensation is linked to GCE's financial performance and designed to align his interest with those of stockholders. Thus, communications regarding the design and objective of this compensation are relevant to private inurement." (*Id.* at 4.)

Although the parties' dispute presents a relatively close call, the Court concludes that Mueller's objections should be overruled. As an initial matter, the requested documents satisfy Rule 26's low bar for relevance. In denying Defendants' motion to dismiss the FTC's nonprofit misrepresentation claim, the Court held that "what the parties, agencies, or this Court understand that term to mean does not necessarily determine how consumers would interpret Defendants' marketing" and that liability would ultimately turn on whether "Defendants' characterization of GCU as a nonprofit was confusing to students and the public." (Doc. 56 at 32, cleaned up.) Thus, during earlier stages of this case, the Court rejected Defendants' relevance-related objections to documents regarding GCU's structure from 2014-18 (Doc. 99 at 4); to documents concerning the plan to convert GCU to a nonprofit (Doc. 120 at 2); and to various communications involving GCU's counsel "in connection with the July 1, 2018 acquisition of [GCU] from GCE and GCU's change-in-ownership application with the Department of Education" (Doc. 144 at 13). As to the last set of documents, the Court elaborated: "[O]ne way the FTC may attempt to establish consumer confusion in this case is by showing that consumers' understanding of the term

---

[1] The FTC also disagrees with any contention that RFP No. 2 should be construed as encompassing six document requests rather than one. (Doc. 181 at 3.) However, Mueller does not raise such an objection in his portion of the discovery dispute notice.

- 3 -

'nonprofit' differs from the reality of how GCU was structured. Even though the documents sought in the Cooley subpoena do not directly address the first part of this inquiry (consumer perception), they are still relevant to the second part of the inquiry (GCU's structure). In particular, the representations that GCU's counsel made to various regulatory agencies and third-party consultants concerning GCU's nonprofit status and structure are relevant in assessing GCU's actual structure." (*Id.* at 18-19.)

Here, too, the documents sought by RFP Nos. 2 and 11 may have a tendency to shed light on how Mueller was actually compensated, and if that compensation differed from consumers' perception of how the president of an asserted nonprofit entity would be compensated, such evidence may support the FTC's nonprofit misrepresentation claim. Separately, the documents sought by RFP Nos. 2 and 11 may also have a tendency to shed light on the design and objective of Mueller's compensation structure—which is a topic that is related to, but distinct from, Mueller's actual compensation—and such evidence also may support the FTC's nonprofit misrepresentation claim. The Court acknowledges that Mueller contends the FTC will not be able to show that consumers held any particular belief about how an asserted nonprofit entity would be structured or how the president of an asserted nonprofit entity would be compensated—"[I]t is now clear that the FTC lacks any factual basis to claim consumers have been confused by GCU's structure—including the terms of Mr. Mueller's compensation" (Doc. 181 at 5-6)—but this is a premature summary judgment argument. This case is still in the discovery phase and the FTC is entitled to pursue discovery in support of its theory of liability.

The discovery dispute nevertheless presents a close call because relevance alone is not enough under Rule 26—the discovery sought also must be proportional to the needs of the case. Here, RFP Nos. 2 and 11 are not limited to seeking information about Mueller's actual compensation. Instead, they sweep more broadly and encompass communications about proposed or contemplated compensation structures dating back as far as 2014 that were never implemented. Additionally, much of the information at issue appears to be duplicative, at least in part, of discovery the FTC already obtained. As noted, the Court

previously allowed the FTC to enforce a subpoena to GCU's counsel for thousands of communications with regulators and third parties regarding the conversion process (Doc. 144 at 16-19) and for an unspecified but seemingly large quantity of documents dating back to 2014 "regarding plans or proposals for the transfer of the Grand Canyon University campus and related assets to a nonprofit entity" (Doc. 120 at 1-2). Those documents presumably also contain some discussion of Mueller's actual and proposed compensation and about GCU's proposed and actual structure.

Even so, the documents sought by RFP Nos. 2 and 11 touch on one of the FTC's central claims in this case. Additionally, Mueller has offered only vague and imprecise claims regarding the burden of searching for and producing responsive documents. Accordingly, the Court concludes that RFP Nos. 2 and 11 are, if just barely, proportional to the needs of the case and thus within the permissible bounds of discovery under Rule 26. Finally, to the extent Mueller disputes whether he has "possession, custody, or control" of certain GCU tax records, that objection lacks merit for the reasons set forth in the Court's November 22, 2024 discovery dispute ruling (Doc. 99 at 2), but nothing in this order precludes Mueller from attempting to withhold otherwise responsive documents based on the good-faith assertion of a claim of privilege.

Accordingly,

**IT IS ORDERED** that the parties' discovery dispute (Doc. 181) is **resolved** as set forth above.

Dated this 17th day of June, 2025.

Dominic W. Lanza
United States District Judge